PAN AMERICAN FIRE & CASUALTY COMPANY, Plaintiff,

v.

Benjamin F. REVERE, Sr., Individually, and as Tutor and Guardian Ad Litem for his Minor Children, Benjamin F. Revere, Jr. and Jewell Autry Revere, et al., Defendants.

Civ. A. No. 9952.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 30, 1960.

Talley, Anthony & Hughes, Charles M. Hughes, Bascom D. Talley, Jr., Bogalusa, La., for plaintiff.

H. Alva Brumfield, Baton Rouge, La., for Movers.

476

WRIGHT, District Judge.

On February 3, 1960, a tragic highway accident occurred near Covington, Louisiana. A large tractor and trailer collided head-on with a bus carrying school children. The bus driver and three of the children were killed and 23 others were injured, some very seriously. A few moments later, compounding the disaster, another collision occurred between two cars following the bus. Having stopped in time to avoid ramming the disabled bus obstructing the highway, the first of the following vehicles was struck from the rear by the other, and John Wells, a passenger in the lead car, was injured.

Alleging that three suits against it have already been filed and that numerous other claims have been made, the tractor's liability insurer has instituted this interpleader action, citing all potential claimants. It asks that they be enjoined from initiating legal proceedings elsewhere or further prosecuting the actions already filed and that they be directed to assert their claims in the present suit. Plaintiff has deposited a bond in the full amount of its policy limits, $100,000,[1] and avers that "it has no interest" in these insurance proceeds, being merely "a disinterested stakeholder." On the other hand, the Company denies liability toward any and all claimants. This apparently contradictory position is explained by the statement of its counsel, incorporated in the record as an amendment to the complaint, that plaintiff "has no further claim" on the sum deposited with the court, but cannot technically admit "liability" since that would amount to a concession that its assured was negligent and expose him to a deficiency judgment.

The only question presented at this stage of the proceeding is whether, under the circumstances outlined, the remedy of interpleader is available to the insurer. At least one of the claimants has challenged the propriety of such a procedure in this instance. Because the question is complicated and has not been fully explored, it may be well to examine the problems presented in some detail.

1. *Jurisdiction.* Though the issue is not raised by the parties, the court must, of course, initially consider whether it has jurisdiction of the cause. Plaintiff here invokes both the Interpleader Act [2] and Rule 22 [3] of the Federal Rules of Civil Procedure and alleges diversity of citizenship as a basis for federal jurisdiction.

■ Considering that four deaths and many serious injuries are involved and that the fund to be distributed is $100,000, the usual jurisdictional amount requirement for diversity suits applicable to an action under the Rule is clearly satisfied.[4] A fortiori, the $500 amount stipulated in the Act is present.[5]

■ Though the exact limits of the diversity requirement under the Rule and under the Act have not been definitively established, it seems clear enough that sufficient diversity exists in this instance for an action under either provision. Plaintiff is a citizen of Texas with its principal place of business in

1. The actual amount of the bond is $100,-400, the additional $400 presumably being intended to cover costs if assessed against the plaintiff.

2. The Interpleader Act of 1936, as amended in 1948, now 28 U.S.C. §§ 1335, 1397, 2361.

3. F.R.Civ.P., Rule 22(1), 28 U.S.C. Paragraph (2) of the Rule merely refers to the Interpleader Act which remains in force.

4. See 28 U.S.C. § 1332(a). Though the courts and the commentators have usually passed the question in silence, it seems clear that the "matter in controversy" in an interpleader suit is the fund to be distributed and that it is immaterial if (as may be the case here) some of the individual claims do not reach the $10,000 figure. The only direct ruling on the point, which so holds, appears to be Massachusetts Bonding & Ins. Co. v. City of St. Louis, D.C.E.D.Mo., 109 F.Supp. 137.

5. 28 U.S.C. § 1335(a). Though the question is not likely to arise with such a minimal requirement, the language of the Act is clear that the $500 figure refers to the total fund and not to the value of the individual claims.

that state, while one defendant, Wells, is a citizen of Wisconsin and all the others are Louisiana residents. Thus, the normal requirement of complete diversity between plaintiff on the one hand and defendants on the other is satisfied. This is viewed as sufficient to support jurisdiction for interpleader under Rule 22.[6] As for the Act, the only requirement, at least for true interpleader, is diversity between some of the defendant claimants, the citizenship of the plaintiff stakeholder being immaterial. Treinies v. Sunshine Min. Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Haynes v. Felder, 5 Cir., 239 F.2d 868.[7] The joinder of the Wisconsin resident together with the Louisiana claimants satisfies this condition. And even if the rule of Treinies and Haynes does not apply here on the ground that this is not a strict interpleader but rather an action "in the nature of interpleader" in which the plaintiff's citizen-

ship is relevant, sufficient diversity exists since there is both "normal" diversity between the plaintiff and all defendants under § 1332 and "interpleader diversity" between at least two co-claimants.[8]

■ 2. *Strict Interpleader or Bill in the Nature of Interpleader.* Apparently of the opinion that the answer may affect the availability of the remedy sought here, the parties have debated the question whether this is a case for "true," "strict," or "pure" interpleader or whether the present facts support only an action "in the nature of interpleader." The difference between the two is that in strict interpleader the plaintiff is a disinterested stakeholder while in the action in the nature of interpleader he is himself a claimant, whether directly or by denying the validity of some or all of the other claims. State of Texas v. State of Florida, 306 U.S. 398, 406–407[9], 59 S.Ct.

---

6. Though Treinies v. Sunshine Min. Co., 308 U.S. 66, 73, note 17, 60 S.Ct. 44, 84 L.Ed. 85, expressly withheld approval of earlier lower court decisions so holding, all recent opinion supports the proposition stated. Ellington v. Metropolitan Life Insurance Company, 5 Cir., 217 F.2d 609; John Hancock Mut. Life Ins. Co. v. Kraft, 2 Cir., 200 F.2d 952; Republic of China v. American Express Co., 2 Cir., 195 F.2d 230; see Austin v. Texas-Ohio Gas Company, 5 Cir., 218 F.2d 739, 742, note 2; Haynes v. Felder, 5 Cir., 239 F.2d 868, 870, note 5; 3 Moore, Federal Practice, Para. 22.04(2), p. 3009.

7. By holding that diversity between *one* of several *joint* claimants and all other claimants who are co-citizens is enough, Haynes has reduced the diversity requirement to the absolute minimum. Accordingly, it would be superfluous to cite the earlier decisions upholding jurisdiction in lesser "incomplete diversity" situations.

8. Both Treinies and Haynes involved "true" or "strict" interpleader situations in which the plaintiff was a completely disinterested stakeholder. Picking up the caveat of the opinion in Treinies, 308 U.S. at page 72, note 11, 60 S.Ct. at page 48, at least one Circuit has held that the normal rule of complete diversity between plaintiff and all defendants applies when the stakeholder is also a claimant. Boice v. Boice, 3 Cir., 135 F.2d 919, affirming D.C., 48 F.Supp. 183. But the better view seems to be to consider the

interested plaintiff as merely another claimant and take his citizenship into account only for the purpose of determining whether there is sufficient diversity between the claimants. Walmac Company v. Isaacs, 1 Cir., 220 F.2d 108, 112; Bierman v. Marcus, D.C.D.N.J., 140 F.Supp. 66, 70, reversed on other grounds, 3 Cir., 246 F.2d 200; 3 Moore, Federal Practice, Para. 22.09(1), p. 3029; Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 975–976; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 397–398. As a practical matter, this means that the plaintiff-stakeholder's citizenship will rarely affect jurisdiction under the Interpleader Act in view of the now settled rule that co-citizenship between some of the claimants will not defeat jurisdiction provided there is one claimant whose citizenship is different from that of all others. See Haynes v. Felder, supra; United States v. Sentinel Fire Ins. Co., 5 Cir., 178 F.2d 217; Pure Oil Co. v. Ross, 7 Cir., 170 F.2d 651; Maryland Casualty Co. v. Glassell-Taylor & Robinson, 5 Cir., 156 F.2d 519.

In the instant case, however, the problem *does not arise since there happens* to be complete diversity between the plaintiff and all defendants as well as diversity between at least one claimant and all others.

9. See also, 3 Moore, Federal Practice, Para. 22.03, p. 3006.

478

563, 830, 83 L.Ed. 817. Thus, if the casualty insurer had brought in the claimants and said to them: "Gentlemen, I put before you the full amount of the policy which those of you who prove your claims must divide between you, but I deny that any of you is entitled to any portion of the fund and pray that all your demands be rejected and that the deposit be returned to me in due course," clearly this would not be a true interpleader but an action in the nature of interpleader. The problem here is whether the allegation of disinterestedness already noted changes the character of the action to one of strict interpleader. In view of the denial of liability and the plaintiff's obligation to its assured to resist all claims, it may be doubted that the requisites of a strict bill are satisfied. On the other hand, some weight must be given to the unequivocal language in which the insurer has attempted to abandon title to the fund. A nice question is presented which theoreticians might debate at some length.

But does it matter how the action is characterized? It would seem to make no difference since both Rule 22 [10] and the Interpleader Act [11] expressly provide for actions in the nature of interpleader as well as strict bills, the drafters in each case voicing their intent to erase the distinction.[12] But before so concluding, we

10. Rule 22(1), F.R.Civ.P., provides that the remedy is available even though " * * * the plaintiff avers that he is not liable in whole or in part to any or all of the claimants."

11. 28 U.S.C. § 1335(a) gives the United States Courts jurisdiction of "any civil action of interpleader *or in the nature of interpleader * * *"* (emphasis added). As already noted, one form of the bill in the nature of interpleader is precisely that in which "the plaintiff avers that he is not liable in whole or in part to any or all of the claimants," so that the Rule and the Act may be considered identical in this respect. The applicability of the Interpleader Act to cases in which the stakeholder resists some or all of the claims is well settled. John Hancock Mut. Life Ins. Co. v. Kegan, D.C.D.Md., 22 F.Supp. 326; Standard Surety & Casualty Co. of New York v. Baker, 8 Cir., 105 F.2d 578; Maryland Casualty Co. v. Glassell-Taylor & Robinson, supra; United States v. Sentinel Fire Ins. Co., supra; Walmac Company v. Isaacs, supra; see New York Life Insurance Company v. Lee, 9 Cir, 232 F. 2d 811, 814; 3 Moore, Federal Practice, Para. 22.07(1), pp. 3019, 3020; Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 970–971; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 417. The rule was otherwise under the 1926 Act. See Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 939–941, 106 A.L.R. 617; Pacific Mut. Life Ins. Co. v. Lusk, D.C. W.D.La., 46 F.2d 505.

The apparent approval of the Vance dictum in a footnote to the opinion in Maryland Casualty Co. v. Glassell-Taylor & Robinson, supra, 156 F.2d 522, note 2, must be disregarded in view of the express holding there that a cause of action was stated under the Interpleader Act, as well as under Rule 22, though the plaintiff insurer denied liability to all claimants. See 156 F.2d at pages 523, 524–525. In any event, the question is now settled for this Circuit by the decision of the Court of Appeals sitting en banc in United States v. Sentinel Fire Ins. Co., supra.

12. For the Rule, see Note of Advisory Committee, in 28 U.S.C.A., F.R.Civ.P., Rule 22: "The first paragraph provides for interpleader relief along the newer and more liberal lines of joinder in the alternative. It avoids the confusion and restrictions that developed around actions of strict interpleader and actions in the nature of interpleader. Compare John Hancock Mutual Life Insurance Co. v. Kegan et al., D.C.Md.1938, 22 F.Supp. 326 * * *"

For the Act, see Senate Report No. 558, 74th Cong., 1st Sess., quoted in pertinent part in John Hancock Mut. Life Ins. Co. v. Kegan, supra, 22 F.Supp. at page 330, note 1, which comments on the grant of jurisdiction over bills in the nature of interpleader in the following words: "Another reason for such jurisdiction is that the distinction between these bills and strict bills of interpleader is not always clear, so that the simplest plan is to allow the United States District Courts to handle both types without being obliged to draw fine distinctions between them for jurisdictional purposes." See also, Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 970.

These decisions may be taken as erasing earlier doubts on this point, presumably inherited from the practice under the 1926 Act. See Girard Trust Co. v. Vance, D.C., 5 F.R.D. 109, 113, 114.

must dispose of an old rule of equity that gave importance to the difference between "pure" and "impure" bills of interpleader.

3. *Special Equitable Ground for Bill in the Nature of Interpleader.* Though apparently known to the early common law, modern interpleader developed in the chancery courts and is today considered an equitable remedy.[13] Hence, in theory at least, the resort to equity must be justified by the absence of an adequate remedy at law. One might suppose that exposure to unnecessary vexation by a multiplicity of suits on the same obligation were a sufficient ground for equitable relief. And so it is if the conditions of strict interpleader are met.[14] But, for reasons that no one bothered to explain, the rule was otherwise when the plaintiff was not a mere stakeholder. It was laid down that a bill in the nature of interpleader would not lie unless supported by some special equity besides double vexation.[15] Thus, a suit like this one which has no independent equitable basis could not be maintained unless it could be characterized as a true bill of interpleader.

Though it was perhaps more honored in the breach than the observance,[16] such was the rule. But, inherently weak, it could not long survive the liberalizing force of the Interpleader Act of 1936 and the Rules of Civil Procedure promulgated in 1938. Indeed, once the difference between strict bills and bills in the nature of interpleader was eliminated, there remained no basis for distinguishing the requirements and demanding special equities for the action in the nature of interpleader. Henceforth, it could be assumed that the prerequisites of interpleader were the same whether the plaintiff were interested or not, and that these conditions were spelled out in the written provisions. The point was forcibly made by Judge Chesnut whose celebrated opinion in John Hancock Mut. Life Ins. Co. v. Kegan, supra, noted the absurdity of distinguishing between the equities required for "pure" and "impure" interpleader and held that exposure to undue harassment by a multiplicity of suits was a sufficient ground to maintain a bill in the nature of interpleader.[17] The old rule was dying when, a year later, the Eighth Circuit Court of Appeals dealt it the final blow in Standard Surety & Casualty Co. of New York v. Baker, supra, ignoring the complaint of the District Judge that "the admirably expressed views of Judge Chestnut * * * cannot prevail against all authority."[18] The Kegan decision is now generally approved[19] and followed.[20]

---

13. 3 Moore, Federal Practice, Para. 22.03, p. 3005; 2 Story, Equity Jurisprudence (14th ed., 1918), §§ 1110–1117, pp. 502–507; 4 Pomeroy, Equity Jurisprudence (5th ed., 1941), § 1320, p. 902, n. 15.

14. 4 Pomeroy, op. cit. supra, § 1320, pp. 904–905; Chafee, Interpleader in the United States Courts, 41 Yale L.J. 1134, 1138; see Klaber v. Maryland Casualty Co., supra, 69 F.2d 939.

15. 3 Moore, Federal Practice, Para. 22.03, p. 3006; Para. 22.07, p. 3020; 2 Story, op. cit. supra, § 1140, p. 522; Chafee, Interpleader in the United States Courts, 41 Yale L.J. 1134, 1138; see John Hancock Mut. Life Ins. Co. v. Kegan, supra, 22 F.Supp. 330.

16. See 3 Moore, Federal Practice, Para. 22.07(1), p. 3020.

17. With less ado, the Fifth Circuit Court of Appeals had already so held in Fleming v. Phoenix Assur. Co., 5 Cir., 40 F. 2d 38. Also worthy of note, though dealing with strict interpleaders, are Judge Foster's opinion, quoted with approval by the Supreme Court, in National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212, 214–215, affirmed on the merits sub nom. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 199, 54 S.Ct. 677, 78 L.Ed. 1206; and Judge Maris' opinion in Metropolitan Life Ins. Co. v. Segaritis, D.C. E.D.Pa., 20 F.Supp. 739, 740–741.

18. Otis, J., in Standard Surety & Casualty Co. v. Baker, D.C.W.D.Mo., 26 F. Supp. 956, 958, reversed 8 Cir., 105 F.2d 578.

19. 3 Moore, Federal Practice, Para. 22.07 (1), p. 3020; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 411–412.

20. Standard Surety & Casualty Co. of New York v. Baker, supra; Maryland Casualty Co. v. Glassell-Taylor & Robinson, su-

■■ The present law, then, is that the only equitable ground necessary for interpleader, whether the plaintiff is a disinterested stakeholder or not, is exposure to double or multiple vexation. But, of course, this does not mean that every person threatened with a multiplicity of suits is entitled to interplead. The function of interpleader is to rescue a debtor from *undue* harassment when there are several claims made against the *same fund*. It is because the aggregate demands exceed the insurer's contractual obligation that the condition is here satisfied.[21]

4. *Exposure to Multiple Liability.* Though the Interpleader Act makes no such requirement, Rule 22 apparently permits interpleader only if the claims "are such that the plaintiff is or may be exposed to double or multiple *liability*." (Emphasis added.) In theory at least, this is not necessarily the same thing as exposure to double or multiple *vexation* on a single obligation. There may be situations in which the debtor, though harassed by many suits on account of one transaction, is never in danger of being compelled to pay the same debt twice. Indeed, here, the argument is advanced that because it has fixed the limits of its liability in its policy, the insurer is not exposed to multiple liability no matter how many claims are filed, and, therefore, is not entitled to maintain interpleader, at least under the Rule.

■ But the requirement is not a strict one. Nor could it be as part of a Rule that is said to provide "the most modern and liberal method of obtaining interpleader to be found." [22] The key to the clause requiring exposure to "double or multiple liability" is in the words "may be." The danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice. At least, it is settled that an insurer with limited contractual liability who faces claims in excess of his policy limits is "exposed" within the intendment of Rule 22,[23] and we need go no further to find the requirement satisfied here.

■ 5. *Adversity of Claimants.* In a somewhat overlapping objection, it is said that the present claims are not characterized by that "adversity" to one another which is a prerequisite of interpleader.[24] It is of course true that they are identical neither in origin nor in amount and that they are, in some degree at least, independent demands. But, despite the objection of purists who would retain the old doctrine of complete "mu-

pra; John Hancock Mut. Life Ins. Co. v. Yarrow, D.C.E.D.Pa., 95 F.Supp. 185; see also, Loew's, Inc. v. Hoyt Management Corporation, D.C.S.D.N.Y., 83 F. Supp. 863, 865; First State Bank of Chariton, Iowa v. Citizens State Bank, D.C.D.Neb., 10 F.R.D. 424, 426; Massachusetts Bonding & Ins. Co. v. Antonelli Const. Co., D.C.D.Mass., 173 F.Supp. 391, 392. State of Texas v. State of Florida, supra, 306 U.S. at pages 406–407, 59 S.Ct. at pages 567–568, an original suit under neither the Act nor the Rule, also implies that the same equitable ground of exposure to *multiple* vexation will support both a true interpleader and a bill in the nature of interpleader.

21. See Standard Surety & Casualty Co. of New York v. Baker, supra; Maryland Casualty Co. v. Glassell-Taylor & Robinson, supra. If the claims did not exceed the policy limits there would be no ground for interpleader. See American

Surety Co. of New York v. Calcasieu Oil Co., Inc., D.C.W.D.La., 2 F.Supp. 200. Nor would there be under the circumstances of the present suit as to the tortfeasor himself, since his liability is in no way limited.

22. 3 Moore, Federal Practice, Para. 22.04 (1), p. 3007. It should be noticed that the Committee Note to Rule 22 cites Kegan with apparent approval. See Note 12, supra.

23. See Standard Surety & Casualty Co. of New York v. Baker, supra, reversing a more literal District Judge, 26 F.Supp. 956, 958; and Maryland Casualty Co. v. Glassell-Taylor & Robinson, supra.

24. The Interpleader Act, 28 U.S.C. § 1335 (a) (1), specifically requires that there be "Two or more adverse claimants, * * *" Rule 22, F.R.Civ.P., more indirectly refers to "claims * * * [which] are adverse to * * * one another."

tual exclusiveness," [25] both Rule 22 [26] and the Interpleader Act [27] now expressly provide that this is no bar to the remedy. On the other hand, there remains a requirement that the claimants be "adverse" in some way. The question is whether that requirement is met when, as here, the claimants, though in theory indifferent toward each other, are in fact competing for a fund which is not large enough to satisfy them all.[28] The answer is clear. As Judge Thompson said in Fidelity & Deposit Co. of Maryland v. A. S. Reid & Co., D.C.E.D.Pa., 16 F.2d 502, 504: "In that situation it is to the interest of each claimant to reduce or defeat altogether the claim of every other claimant. There can be no more striking illustration of the opposition of every claimant to every other claimant * * * *" [29]

6. *Fault of Plaintiff.* Because interpleader is an equitable remedy the "clean hands doctrine" applies. Accordingly, "if the hazard which plaintiff seeks to avoid has been occasioned by his own act he is not entitled to the remedy." [30] One application of the rule is that "a tortfeasor cannot obtain protection in an action in the nature of interpleader against the consequences of his own

---

25. See Dissenting Opinion of Judge Holmes in United States v. Sentinel Fire Ins. Co., supra, 178 F.2d at pages 230, 231–232, 234–236.

26. Rule 22(1), F.R.Civ.P., provides in part: "It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, * * *"

27. 28 U.S.C. § 1335(b) provides: "Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another."

28. In this instance, considering the number of victims and the fact that four of them died, there can be no question but that the available fund will be insufficient to fully compensate everyone.

It is of no moment that some of the "claims" alleged may not have been actually asserted, for under both the Rule and the Act, as amended in 1948, the availability of interpleader is determined on the basis of the claims which "may" be asserted. Rule 22(1), F.R.Civ.P.; 28 U.S.C. § 1335(a) (1). See 3 Moore, Federal Practice, Para. 22.04(1), p. 3008, n. 4; Para. 22.08(2), p. 3025; Hunter v. Federal Life Ins. Co., 8 Cir., 103 F.2d 192 (Rule); A/S Krediit Pank v. Chase Manhattan Bank, D.C.S.D.N.Y., 155 F.Supp. 30, 34 (Rule, dictum as to Act, as amended in 1948). Nor is it important whether the claims asserted are, in fact, meritorious, or even bona fide. See John Hancock Mut. Life Ins. Co. v. Kraft, supra (Rule); A/S Krediit Pank

v. Chase Manhattan Bank, supra, 155 F. Supp. at pages 33–34 (Rule); Mallonee v. Fahey, D.C.S.D.Cal., 117 F.Supp. 259, 274–275 (Act); Massachusetts Mut. Life Ins. Co. v. Edner, D.C.W.D.Pa., 73 F. Supp. 300, 303 (Act); Harris v. Travelers Ins. Co., D.C.E.D.Pa., 40 F.Supp. 154, 157 (Rule); Metropolitan Life Ins. Co. v. Segaritis, supra, 20 F.Supp. at page 741 (Act).

29. The Fidelity & Deposit Co. case was decided under the 1926 Act (Act of May 8, 1926, c. 273, 44 Stat., Pt. 2, 416), but, insofar as the requirement of adverse claimants is concerned, there is no difference between that law and the present Interpleader Act. Indeed, the case is cited and the ruling reiterated in Standard Surety & Casualty Co. of New York v. Baker, supra, 105 F.2d at page 582, decided under the 1936 Act, which, except as amended in other particulars in 1948, is the current statute. See also, First State Bank of Chariton, Iowa v. Citizens State Bank, supra, 10 F.R.D. at page 426.

Interpleader was allowed under similar circumstances, though without express discussion of the adversity of the claimants, in, among others, Dugas v. American Surety Co., 300 U.S. 414, 57 S. Ct. 515, 81 L.Ed. 720 (1926 Act); Maryland Casualty Co. v. Glassell-Taylor & Robinson, supra (Rule 22(1) and 1936 Act); and Massachusetts Bonding & Ins. Co. v. Antonelli Const. Co., supra (present Act). See also, American Surety Co. of New York v. Calcasieu Oil Co., supra.

30. Calloway v. Miles, 6 Cir., 30 F.2d 14, 15. See also, Royal Neighbors of America v. Lowary, D.C.D.Mont., 46 F.2d 565.

wrong." [31] Thus, the driver of the trailer-truck here probably could not maintain the action. But does it follow that his insurer is also disqualified?

The only basis for such a contention in the present circumstances is the Louisiana rule that an automobile liability insurer is considered a "joint tort feasor" with its assured when the latter is at fault.[32] But that characterization is merely a useful fiction designed to prevent the inequitable result that would otherwise be imposed by the strict laws of prescription.[33] Clearly, it has nothing to do with, and cannot affect, the equitable doctrine of "clean hands." As a matter of fact, the insurer here is altogether blameless. There is no reason why it cannot appeal to equity.

7. *Unliquidated Tort Claims as Justifying Interpleader.* Over and above the technical objections already disposed of, the argument is advanced that interpleader is not an appropriate method of adjudicating unliquidated tort claims. Such a bald proposition might be rejected summarily were it not for the startling fact that there appears to be no precedent in the federal courts for granting interpleader in the present situation. The matter must be examined closely.

At the outset, it seems clear that interpleader will lie when there are several tort claimants who have obtained judgments which aggregate more than the amount of the policy.[34] Indeed, in that case it can make no difference whether the claims originated in tort or

contract. Moreover, it is settled that interpleader is available to an insurer whose policy is insufficient to satisfy contract claims, though they have not been reduced to judgment.[35] Why, then, should the remedy be denied to a blameless insurer faced with excessive tort claims? Three reasons have been suggested: (1) As to quantum, at least, tort claims are more conjectural than contract claims; (2) since it is not directly liable to the claimants, the insurer's exposure as to tort claims is "remote" until they have been reduced to judgment; and (3) tort claims "are peculiarly appropriate for jury trial," which would have to be denied under the equitable practice of interpleader.

The effect of the first objection is only this: that it is more difficult in the case of tort claims to determine whether the aggregate will exceed the policy limits so as to render the claimants "adverse" and expose the insurer to "multiple liability." It may be that there are few cases in which this result can be reasonably anticipated, but, clearly, this is one of them.

The second objection, though it forms the basis of the only reported decision denying interpleader to an automobile liability insurer,[36] is no better. Indeed, under the "may be exposed" clause of Rule 22 and the "may claim" clause of the Interpleader Act, it would not seem to matter how remote the danger might be.[37] But, in any event, prematurity is no defense under the peculiar Louisiana

31. Holcomb v. Aetna Life Insurance Company, 10 Cir., 228 F.2d 75, 82.

32. See Gray v. Hartford Accident & Indemnity Co., D.C.W.D.La., 31 F.Supp. 299, 301; Id., D.C., 36 F.Supp. 780.

33. See LSA–C.C., Arts. 2097, 2324, 3536, 3552.

34. See Klaber v. Maryland Casualty Company, supra, where it is implied that the remedy would be available in such a situation even under the 1926 Act, at least

if bills in the nature of interpleader were authorized, as they now are.

35. See, e.g., Standard Surety & Casualty Co. of New York v. Baker, supra.

36. American Indemnity Co. v. Hale, D.C. W.D.Mo., 71 F.Supp. 529, 533–534.

37. See Chafee, The Federal Interpleader Act of 1936: II, 45 Yale L.J. 1161, 1162–1167; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 419–421.

law[38] which allows a direct action against the automobile liability insurer.

Finally, the argument based on denial of trial by jury must fall in view of the conclusion reached here that interpleader and jury trial of certain issues can properly be combined.

Since nothing in Rule 22 or the Interpleader Act opposes the use of the remedy in an automobile case, and all the prerequisites of interpleader are satisfied, it would be a violation of the principle of "liberal construction" of "remedial" legislation[39] to deny the present plaintiff the protection it asks for.

8. *Jury Trial.* On the theory that the resort to equity defeats the right of trial by jury, it has been said that once interpleader is granted all issues in the case must be tried to the judge alone.[40] There is, however, eminent authority to the contrary, including Judge Learned Hand,[41] Professor Chafee,[42] and Professor Moore,[43] who hold that legal issues arising in an interpleader action can be tried before a jury. Whatever may be the right solution in another case, here it seems clear that the questions of liability and damages ought to be put to a jury. As Professor Chafee says: " * * the victims of the automobile accident

should not be enjoined from suing at law before a jury. That is the proper way to determine the validity and amount of each accident claim."[44] Nothing in Rule 22 or the Interpleader Act opposes such a procedure. Indeed, the provision of the Federal Rules which permits separate trial of distinct issues invites this solution.[45] Thus, there can be no objection to granting interpleader here on the ground that Seventh Amendment rights are thereby denied. Each claimant can be given a full opportunity to prove his case before a jury, reserving to the court only the task of apportioning the fund between those who are successful if the aggregate of the verdicts exceeds the amount of the insurance proceeds.

9. *Enjoining of Other Proceedings.* Usually interpleader will not be really effective unless all claimants are brought before the same court in one proceeding and restricted to that single forum in the assertion of their claims. To accomplish that end, absent voluntary self-restraint on the part of all interested parties, it is of course essential that the interpleader court enjoin the institution or prosecution of other suits on the same subject matter elsewhere. Immediately, the question arises whether Section 2283 of Title 28 of the Code presents an obstacle to enjoining state court proceedings.[46]

38. LSA–R.S. 22:655.

39. See Sanders v. Armour Fertilizer Works, 292 U.S. 190, 199, 54 S.Ct. 677, 78 L.Ed. 1206.

40. See Liberty Oil Co. v. Condon Nat. Bank, 260 U.S. 235, 244, 43 S.Ct. 118, 67 L.Ed. 232; Bynum v. Prudential Life Ins. Co. of America, D.C.E.D.S.C., 7 F. R.D. 585, 586–587.

41. See Sherman Nat. Bank of New York v. Shubert Theatrical Co., D.C.S.D.N.Y., 238 F. 225, 230–231, affirmed 2 Cir., 247 F. 256, quoted with approval in John Hancock Mut. Life Ins. Co. v. Kegan, supra, 22 F.Supp. at pages 329–330. See also, the opinion of Judge Rives, sitting as District Judge, in Liberty Nat. Life Ins. Co. v. Brown, D.C.M.D.Ala., 119 F.Supp. 920, 921–922.

42. Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377, 420.

43. 3 Moore, Federal Practice, Para. 22.04 (3), p. 3013.

44. See note 42, supra.

45. F.R.Civ.P., Rule 42(b). The applicability of the Rules of Civil Procedure to an action under the Interpleader Act is expressly stated in F.R.Civ.P., Rule 22 (2).

46. The cited provision does not, of course, prevent enjoining other *federal* court proceedings. Nor is Section 2283 viewed as barring an injunction restraining the parties from instituting a state court action on the same issue *in the future.* See 1 Moore, Federal Practice, Para. 0.208 (3.–1), p. 2316; Para. 0.229(1), pp. 2636–2637. The only question is wheth-

As amended in 1948, that section prohibits a federal court from interfering with a pending state court action except in three situations: (1) Where such a course is "expressly authorized by Act of Congress"; (2) where the issuance of an injunction by the federal court is "necessary in aid of its jurisdiction"; and (3) where the court's action is required "to protect or effectuate its judgments." Clearly, the first exception is applicable to a suit brought under the Interpleader Act since that statute expressly empowers the court to enjoin the claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action * * * " [47] But the exception

does not apply to an action under Rule 22, for the quoted provision authorizing stay orders is restricted to statutory interpleader.[48] If state court proceedings can be enjoined when interpleader is brought under the Rule it must be by virtue of the second exception in Section 2283.[49]

■ The question whether the court entertaining a non-statutory interpleader suit may enjoin state court proceedings on the same issues on the theory that it is "necessary in aid of its jurisdiction" is not free from doubt. Before Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, such power appears to have been recognized.[50] Not surprisingly, afterward, it was denied.[51]

er the interpleader court has power to enjoin an already pending state court proceeding. Chafee, Interpleader in the United States Courts: II, 42 Yale L.J. 41, 43.

47. 28 U.S.C. § 2361. See Treinies v. Sunshine Min. Co., supra, 308 U.S. at page 74, 60 S.Ct. at page 48, 84 L.Ed. 85.

48. As amended in 1949, 28 U.S.C. § 2361 begins: "In any civil action of interpleader or in the nature of interpleader *under section 1335 of this title*, * * * " (emphasis added). Even before the clarifying amendment, Moore was of the opinion that § 2361 applied only to statutory interpleader. See 3 Moore, Federal Practice, Para. 22.04(2), p. 3012, n. 11; Para. 22.13(2), pp. 3045–3046.

49. The third exception permitting a stay of state court proceedings where the court finds it necessary "to protect or effectuate its judgments" might, of course, be invoked after a final adjudication on the claims to prevent relitigation, but it authorizes no injunction during the pendency of the interpleader action.

50. Until 1948, the prohibition against staying proceedings in state court (then Section 265 of the Judicial Code, former 28 U.S.C. § 379) contained no express exception in favor of injunctions necessary "in aid of the court's jurisdiction," but the jurisprudence had nevertheless made such an exception. See, e.g., Wells Fargo & Co. v. Taylor, 254 U.S. 175, 183, 41 S.Ct. 93, 65 L.Ed. 205; Looney v. Eastern Texas

R. R. Co., 247 U.S. 214, 221, 38 S.Ct. 460, 62 L.Ed. 1084; State of Missouri v. Chicago, Burlington & Quincy R. R., 241 U.S. 533, 542–543, 36 S.Ct. 715, 60 L.Ed. 1148; Chesapeake & Ohio Ry. Co. v. McCabe, 213 U.S. 207, 219, 29 S.Ct. 430, 53 L.Ed. 765; Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629. Under this policy injunctions against state court proceedings had been issued by the interpleader court in Sherman Nat. Bank of New York v. Shubert Theatrical Co., supra; Fleming v. Phoenix Assur. Co., supra; and Marine Midland Trust Co. of New York v. Irving Trust Co., D.C.S.D.N.Y., 56 F.2d 385, appeal dismissed sub. nom. Marine Midland Trust Co. of New York v. Eybro Corporation, 2 Cir., 58 F.2d 165. In his article Interpleader in the United States Courts: II, 42 Yale L.J. 41, 41–44, Professor Chafee distinguishes these cases as involving "ancillary interpleader," but, except for Judge Hand in Sherman Nat. Bank, none of the opinions is thus qualified. Moreover, in three cases decided under the 1926 Act there is dictum to the effect that an injunction is authorized even without the express provision of the interpleader statute. See Dugas v. American Surety Co., supra, 300 U.S. 428–429, 57 S.Ct. 521; Ross v. International Life Ins. Co., 6 Cir., 24 F.2d 345, 346; National Fire Ins. Co. v. Sanders, supra, 215. The only contrary ruling is Lowther v. New York Life Ins. Co., 3 Cir., 278 F. 405.

51. Agricultural Ins. Co. v. The Lido of Worcester, D.C.D.Mass., 63 F.Supp. 799, 802.

But with the 1948 Revision overruling Toucey and expressly codifying the exception, the old rule may be deemed reestablished,[52] and every indication is that, regardless of the Interpleader Act, the power of a federal court to enjoin pending state court proceedings in a case like this one will be sustained.[53] Certainly that result is desirable, if not indispensable. If the court had no power to enjoin concurrent state court proceedings, the grant of interpleader would often create more problems than it solved.

■ 10. *Venue and Service of Process.* It has been demonstrated thus far that, except as to strictly jurisdictional matters,[54] the requirements for interpleader under Rule 22 and under the Interpleader Act are identical, and that the present action could be maintained under either provision. But there are two procedural limitations on actions under the Rule which become important whenever the claimants are not all within the territorial jurisdiction of the district court. The first is that the only proper venue for the suit when the defendants do not all reside in the same state is the residence of the plaintiff;[55] the second, that process cannot run beyond the boundaries of the state in which the court sits.[56] These restrictions are of course waivable,[57] but if objection is raised by the affected defendant,[58] they usually form an absolute bar to the action.[59] Thus, here, if Rule 22 alone were applicable, absent a waiver of venue by Wells, the suit would have to be instituted at the plaintiff's domicile in Texas,[60] and none of the defendants could be validly served unless they were found in that state.

■ But the situation is different when jurisdiction exists under the stat.

52. See Reviser's Note under 28 U.S.C.A. § 2283, which states, in part, that the amendment "* * * restores the basic law as generally understood and interpreted prior to the Toucey decision."

53. See Austin v. Texas-Ohio Gas Company, supra, 218 F.2d 743–744, where the proposition is stated, albeit by way of dictum, and American Ins. Co. v. Lester, 4 Cir., 214 F.2d 578, 582, a declaratory action in which a stay of state court proceedings is upheld. See also, 3 Moore, Federal Practice, Para. 22.04(2), pp. 3011–3012; Para. 22.13(2), p. 3046.

54. I.e., jurisdictional amount and diversity requirements. One other difference has not been mentioned. While the Interpleader Act expressly requires deposit of the money or property in the registry of the court, or of an equivalent bond, the Rule makes no such requirement. See 3 Moore, Federal Practice, Para. 22.-04(2), p. 3013.

55. 28 U.S.C. § 1391(a), as qualified by 28 U.S.C. §§ 1392(a), 1393(b). Except very rarely, interpleader jurisdiction will be founded on diversity of citizenship rather than the existence of a federal question.

56. F.R.Civ.P., Rule 4(f).

57. F.R.Civ.P., Rule 12(b), (h). As to venue, see also, 28 U.S.C. § 1406(b).

58. Only the defendant as to whom the venue is improper can object. Camp v. Grass, 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997. See also, 1 Moore, Federal Practice, Para. 0.60(10), p. 666; 3 id., Para. 19.04(2), p. 2119.

59. The transfer provisions of 28 U.S.C. § 1406(a) will normally offer no alternative to dismissal since under the circumstances envisaged there is no district of proper venue where all defendants are amenable to service of process. Cf. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254.

It is true that unless the objecting defendant is an indispensable party, he can be dropped without dismissing the action. But whether the affected defendant is or not technically "indispensable," the court would hesitate to exercise its discretion to grant equitable relief and go forward without all potential claimants since the interpleader remedy would then be of doubtful utility.

60. Because of the Wisconsin defendant, there is no one district or state in which "all defendants reside" and the only proper venue is that of the plaintiff. (Except for Wells, the present venue would not be objectionable since all the other

ute, for the Interpleader Act specially provides that the action may be commenced in any district where one defendant resides [61] and that process will run throughout the United States.[62] Unfortunately, these exceptional rules apply only to statutory interpleader.[63] The present suit, then, is maintainable only under the Interpleader Act unless the Wisconsin defendant waives venue and voluntarily appears or is found in Louisiana.[64]

■ 11. *Conclusion.* Although, because of the venue and service problems just recited, Rule 22 is not available, the court clearly has jurisdiction of the action under the Interpleader Act. Accordingly, the prayer for interpleader will be granted, without, however, discharging the plaintiff who is contractually bound to resist the demands. Injunctions will issue restraining all parties from further prosecuting any pending suits against plaintiff or its assured on account of the accident described, or from instituting like proceedings before this or any other court. All defendants will be required to enter their claims by way of answer in this action within thirty days from notice of this judgment. Thereafter, upon timely demand by any one of the parties, the court will order a joint jury trial of all the claims upon the issues of liability and damages. In the event the aggregate of the verdicts should exceed the amount of plaintiff's liability, the court reserves unto itself the task of apportioning the insurance proceeds in such manner as it deems just.

The motion to dismiss will be denied.

---

claimants are residents of the Eastern District of Louisiana.)

61. 28 U.S.C. § 1397.

62. 28 U.S.C. § 2361.

63. Both Sections 1397 and 2361 are in terms limited to "any civil action of interpleader or in the nature of interpleader *under section 1335 of this title*

* * *" (emphasis added). See also, Note 48, supra.

64. From what has been said it is clear that Rule 22(1) is useful only when all the claimants are co-citizens and there is no jurisdiction under the Interpleader Act. In that situation the suit can be brought at the defendants' residence and there will normally be no venue or service problem.