**MFA MUTUAL INSURANCE COM-
PANY, Plaintiff,**

v.

**Roger Kent LUSBY, Robert R. McMillian,
Jr., Dennis L. Fuller, Betty Carolyn Via,
Dan A. Chrisman, Administrator, C. C.
Lindsey, Administrator, Defendants.**

**Civ. A. No. 67–C–26–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 31, 1969.

Richard C. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for MFA Mut. Ins. Co.

Arthur E. Smith, Roanoke, Va., for Roger Kent Lusby.

Homer C. Eliades, Hopewell, Va., for Robert R. McMillian, Jr.

Morton Honeyman, Roanoke, Va., for Betty Carolyn Via.

A. Albert Balavage, Fairfax, Va., for Dan A. Chrisman, Admin.

Walter W. Wood, Roanoke, Va., for C. C. Lindsey.

John L. Walker, Jr., Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for State Farm.

W. H. Jolly, Kime, Jolly & Clemens, Salem, Va., for Aetna Casualty & Surety Co.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

MFA Mutual Insurance Co., a Missouri corporation, hereinafter referred to as MFA, has filed this complaint in the nature of interpleader against Roger Kent Lusby, hereinafter referred to as the insured, a resident of the State of Missouri, Robert R. McMillian, Jr., a resident of the State of Tennessee, Dennis L. Fuller, a resident of the State of California, Betty Carolyn Via, a resident of the State of Virginia, Dan A. Chrisman, Administrator of the Estate of Della C. Box, deceased, a resident of the State of Virginia, and C. C. Lindsey, Administrator of the Estate of Frankie Lou Farris, deceased, a resident of the State of Virginia. MFA was the automobile liability insurance carrier for Roger Kent Lusby on a liability insurance policy numbered 45–1–868494–001 and issued to Roger Kent Lusby and/or S. T. Lusby on July 26, 1966, beginning coverage on July 19, 1966. The MFA policy limited the liability coverage to the standard $15,000 for each person, never to exceed $30,000 for each accident. On November 10, 1966, the insured, while operating the 1966 Ford described in the aforementioned policy, col-

lided head-on with another car approximately five (5) miles west of Farmville, Virginia, on U.S. Route 460. The defendant claimants, Robert R. McMillian, Jr. and Dennis T. Fuller, were riding in the vehicle operated by the insured at the time of such accident and suffered injuries as a result thereof. Defendant claimant Betty Carolyn Via, and the two deceased, Della C. Box and Frankie Lou Farris, were injured while riding in the automobile which collided with the 1966 Ford.

Suits have heretofore been instituted against the insured by all the defendant claimants except Dennis F. Fuller, and the claims in these suits far exceed the $30,000 which is the limited insurance coverage provided in the MFA policy. In an effort to settle all possible claims against it arising out of the aforementioned automobile collision, MFA has filed this complaint in the nature of interpleader and given bond to this court in the amount of $30,000. The defendant claimant, Robert R. McMillian, Jr., filed an action against the insured in the Circuit Court of Prince George County, Virginia; the remaining three actions which have been instituted by the other defendant claimants against the insured are all pending before this court. MFA asks this court to enjoin the defendant claimants from further prosecuting the actions pending against the insured or initiating further actions arising from the automobile collision in question and further asks that the parties be directed to assert their claims in the present suit.

MFA contends that the policy of insurance issued to the insured should be void as a matter of law because the insured by his agent, S. T. Lusby, made material misrepresentations in his application for liability insurance which were relied on by MFA. Pursuant to Fed.R. Civ.P. 56 cross motions have been filed by MFA and by the intervenors, State Farm Mutual Automobile Insurance Company, the insurance carrier for Frankie Lou Farris, deceased, and Aetna Casualty and Surety Company, the insurance carrier for Betty Carolyn Via, requesting the court to enter up summary judgment as to the question of MFA's liability on the insurance policy issued to the insured. The material facts are not in dispute.

The court must first decide whether in these circumstances the action of interpleader is available to the claimant and, if so, whether the claimant should be held liable on the insurance policy issued to the insured.

## JURISDICTION

The insured by counsel has moved to dismiss the complaint on the grounds that the instant action is not in the nature of interpleader but rather is in fact a motion for declaratory judgment on the insurance policy contract and that there is not sufficient diversity of citizenship because both parties to the insurance policy contract are citizens of the State of Missouri.

■■■ The true bill of interpleader historically is an action in which the plaintiff is a disinterested stakeholder who requests the court to determine which of two or more adverse claimants is rightfully entitled to the fund or property possessed by the plaintiff. On the other hand, in an action in the nature of interpleader the plaintiff is not merely an active claimant who asserts claims adverse to those of the defendant claimants. State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); 3A Moore, Federal Practice, ¶ 22.03 p. 3006. Accordingly, the present action is one in the nature of interpleader since MFA is an active claimant who denies the validity of all claims of the defendant claimants to the $30,000.

■■■ The remedy of interpleader, including the action in the nature of interpleader, has long been available in equity and is available in the United States District Courts, as expressly recognized by the rules of court. Fed.R.Civ.P. 22. The jurisdiction for actions of interpleader is expressly delineated by Con-

gress in 28 U.S.C. § 1335 which provides in part:

(a) The district court shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader \* \* \*, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, \* \* \*; and if (2) the plaintiff has deposited such money or property \* \* \* into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, \* \* \*

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335, above partially recited, has not altered the basic nature of the remedy of interpleader which is an equitable remedy, and a statutory interpleader action is still governed by equitable principles of interpleader. Holcomb v. Aetna Life Ins. Co., 228 F.2d 75 (10th Cir. 1955), cert. denied 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853; Pennsylvania Fire Ins. Co. v. American Airlines, Inc., 160 F.Supp. 239 (E.D.N.Y.1960). Hence, the old equitable rule is still applicable that a resort to interpleader, an equitable remedy, must be justified by the absence of an adequate remedy at law. With few exceptions the rule is now accepted that exposure to unnecessary vexation by a multiplicity of suits is a sufficient ground for maintaining either strict interpleader or an action in the nature of interpleader. Pan American Fire & Casualty Co. v. Revere, 188 F.Supp. 474 (E.D.La.1960); John Hancock Mutual Life Ins. Co. v. Kegan et al., 22 F.Supp. 326 (D.Md.1938); 3A Moore, Federal Practice, ¶ 22.07 at 3042. Multiplicity

of suits has been accepted as complete justification in Fed.R.Civ.P. 22 which provides, "(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

The insured motion to dismiss is apparently directed to the fact that MFA is denying liability on the insurance policy thereby asserting a claim adverse to the defendant and, consequently, is not a disinterested stakeholder. As already pointed out an action in the nature of interpleader does not preclude a plaintiff from asserting an adverse claim to the money or property in dispute. A plaintiff is allowed by both 28 U.S.C. § 1335 and Fed.R.Civ.P. rule 22 to bring an action in the nature of interpleader while averring that he is not liable to any or all of the claimants.

The motion to dismiss also contends that the necessary diversity of citizenship is lacking to grant jurisdiction. The jurisdictional requirement of diversity is different in the interpleader statute, 28 U.S.C. § 1335, from the diversity requirement in the general statute 28 U.S.C. § 1332. Diversity between the plaintiff and each defendant is not necessary in a statutory interpleader action; "minimum diversity" is sufficient i. e. the only requirement is that there be at least two adverse claimants of diverse citizenship. Haynes v. Felder, 239 F.2d 868 (5th Cir. 1957); Builders and Developers Corp. v. Manassas Iron and Steel Co., 208 F.Supp. 485 (D.C.Md. 1962).

Despite one decision to the contrary in Boice v. Boice, 135 F.2d 919 (3rd Cir. 1943) it is well established that where there are two opposing claimants of diverse citizenship, as is true in the instant case, then it is permissible for the interested stakeholder to be of the same citizenship as one of the claimants. Pan American Fire & Casualty Co. v. Revere, 188 F.Supp. 474

(E.D.La.1960) and authorities therein cited.

The only other grounds of objection apparent to the court is that the remedy of interpleader should not be available to adjudicate unliquidated tort claims. The early case of American Indemnity Co. v. Hale, 71 F.Supp. 529 (W.D.Mo.1947) denied the remedy of interpleader on that ground. Interpleader is an equitable remedy designed to give relief to a stakeholder who cannot assemble all of the adverse claimants in a state court to settle the controversy in one proceeding, and the remedy should be liberally construed to protect stakeholders not only from multiple liability but also to protect them from the trouble and expense of multiple litigation. Tollett v. Phoenix Assur. Co. of N.Y., 147 F.Supp. 597 (W.D.Ark.1956). See also Douglas-Guardian Warehouse Corp. v. Ramy Seed Co., 271 F.2d 24 (8th Cir. 1959). Bearing in mind that the interpleader statute should be liberally construed, this court is of the opinion that the holding in American Indemnity v. Hale et al, supra, should not be followed, and the better rule is laid down in Pan American Fire & Casualty Co. v. Revere, supra. Four suits have already been instituted against the insured, all of which would have to be defended by MFA under the insurance contract if it is liable thereon. Obviously, the possibility of multiple litigation is just as great as with contract claims or any other liquidated claims. It is clear in the instant case that the combined claims will exceed the amount of the fund in controversy, and it is also clear that MFA may be subject to multiple vexation and litigation if it is not allowed to proceed by the remedy of interpleader, thus this court will liberally construe 28 U.S.C. § 1335 to prevent injustice. In accord with the holding in Pan American Fire & Casualty Co. v. Revere, supra, this court is of the opinion that unliquidated tort claims in these circumstances are the proper subject of a bill in the nature of interpleader.

LIABILITY

MFA contends that S. T. Lusby, the father and agent of the insured, gave false answers to questions 7 and 14 on the application to MFA for the policy of liability insurance in question, and MFA further contends that it is not liable on the policy issued on the basis of such application because the alleged misrepresentations therein were material to the risk. Questions 7 and 14 were phrased as follows:

(7) Has any driver EVER been arrested for any offense or convicted in any court?

(14) During the past 5 years has the applicant or any member of his household been convicted of a moving traffic violation or had any license or permit to drive or the registration of any automobile suspended, revoked or refused?

The insured's agent answered both questions in the negative. However, the insured had in fact been convicted of a speeding violation on May 22, 1963, in Boone County, Missouri. Also, on November 20, 1962, the insured had received a summons to appear in the office of the Juvenile Officer of Howard County, Missouri, which summons alleged that the insured was speeding. Clyde E. Rogers, the acting Juvenile Officer of Howard County, Missouri during 1962, stated in an affidavit filed in this proceeding; that the insured, accompanied by his father, S. T. Lusby, appeared in Clyde E. Rogers' office in reference to the said summons; at that time the insured was under seventeen (17) years of age, and therefore, the summons was subject to disposition under the Juvenile Code of the State of Missouri; that the affair was disposed of informally, without legal proceedings, by an agreement entered into by himself, the insured and the insured's father whereby it was agreed that no action would be taken on the summons if the insured would abstain from driving for ten (10) days and surrender his operator's license to Clyde E. Rogers for the same ten (10) days; that the insured did surrender

the license on December 11, 1962 for the ten (10) days as agreed; that the license was thereafter returned to the insured on December 11, 1962; that no action was ever filed against the insured on account of the summons; and that "I [Clyde E. Rogers] did not suspend or revoke the operator's license of the said Roger Kent Lusby on account of the aforesaid traffic violation as I had no power or authority to do so either as a Juvenile Officer or as a Prosecuting Attorney."

 The contract of insurance was entered into in the State of Missouri so Missouri law will control, and if the contract is void in Missouri because of the alleged misrepresentation, it is also void in Virginia. See Craig v. Williams, 90 Va. 500, 18 S.E. 899 (1894).

 The Missouri law on this question is clear "A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable." Minich v. M. F. A. Mutual Ins. Co., 325 S.W.2d 56 (Mo.App.1959). In Gooch v. Motors Ins. Co., 312 S.W.2d 605 (Mo.App.1958), the court restated the rule at 608:

> A fact material to the risk within the meaning of the word "material" as used in the statute is one which, if communicated to the insurer, would cause refusal to insure, or, if accepted and policy issued, the rate would be higher.

Thus, the law of Missouri is generally that in order to void an insurance contract a representation made by the insured in an application for insurance must be both (1) a misrepresentation and (2) material to the risk. It is no excuse that the misrepresentation may have been made through mistake and in good faith. Minich v. M. F. A. Mutual Ins. Co., supra. Of course MFA has the burden of proving that the insured's answers to questions 7 and 14 were misrepresentations and were material to the risk.

 The answer to question number 7 represented that the insured had never been arrested for any offense or convicted in any court; this representation was clearly false. There is no apparent disagreement between the parties as to this fact. It is thus agreed that the answer to question number 7 on the application was a misrepresentation—but was such misrepresentation material? The court thinks not. In fact, MFA does not contend in its argument that such misrepresentation was material. Furthermore, James David Morrow, underwriting supervisor for MFA, testified in depositions that MFA would have issued the policy to the insured at the same premium even if MFA had known that the insured had received one speeding conviction and that MFA probably would have issued the policy if they had been told that the insured had two speeding convictions. Mr. Morrow further stated that at the time insurance was issued to the insured MFA had two prerequisites for issuing insurance to males under the age of twenty-five: (1) that the parents must also purchase their insurance from MFA and (2) that the prospective insured must have a favorable driving record. According to Mr. Morrow the requisite of a favorable driving record requires that the insured must not have been convicted within the past five years of driving while intoxicated, must not have had his license suspended in the past five years, and must not have four or more moving traffic violations. Except for the alleged license suspension, the insured had a favorable driving record as defined by the underwriting standards of MFA. It is thus clear from the depositions that MFA has not proven that a yes answer to question number 7 would possibly have influenced their decision to insure Roger Kent Lusby; in fact the testimony of Mr. Morrow indicates that MFA would nevertheless have issued the insurance with no additional charge.

MFA contends that even though the misrepresentation given in answer to question number 7 was not material to

the risk, the answer to question number 14 was also a misrepresentation and was material to the risk. The answer to question number 14 on the application for insurance was also included as statement number 6 in the declarations of the policy so there is no need to discuss declaration number 6 separately.

The real issue in this case is whether the surrender by the insured of his driving license to Clyde E. Rogers should be considered a suspension, revocation or refusal of a permit to drive as defined in question number 14. No Missouri case has been submitted by counsel or discovered by the court defining the words "revocation", "suspension" or "refusal".

It is clear from the facts and the Missouri statutes that the insured had not committed acts justifying the legal revocation or suspension of his driving license. The insured had no violations on his driving record before the incident for which he was summoned to appear before Clyde E. Rogers. The summons was for a speeding violation. If the insured had not entered into the agreement with Rogers and had subsequently been tried and convicted of speeding he could have been penalized a maximum of three points for the offense under the Missouri point system. Missouri Statutes § 302.306. In order to suspend a driving license, § 302.304 of the Missouri Statutes requires that the driver must have accumulated eight points. It is clear that the revocation or suspension of an operator's license is a punishment and cannot be imposed arbitrarily but only as proved by law. Levin v. Carpenter, Mo.App., 332 S.W. 862, 79 A.L.R.2d 859 (1960); City of St. Louis v. Mosier, Mo.App., 223 S.W.2d 117 (1949). Since there was no legal grounds for suspension or revocation of the insured's license, and Clyde E. Rogers admittedly had no authority to suspend or revoke such license, it is clear that the action taken by Clyde E. Rogers in 1962 was not legal suspension or revocation of the insured's permit to drive. In fact Clyde E. Rogers stated in his affidavit that he did not suspend or revoke the operator's license of the insured because he had no authority or power to do so. See Missouri Statutes § 302.225(3).

MFA argues that the terms of revocation and suspension as used in question 14 contemplate an action such as the insured's surrender of his operator's license to Mr. Rogers. MFA argues that it considers the surrender of his operator's license by the insured to Mr. Rogers to be a revocation or suspension as intended by the language in question 14 on their application form. MFA's intent that question 14 should have a particular meaning is not conclusive. The fact that MFA drafted the questions in the application did not insure that such questions would or should be interpreted as MFA intended. Terms of a question in an application for insurance must be interpreted as the ordinary person standing in the shoes of the insured would understand them. Morris v. Western Cas. & Sur. Co., Mo.App., 421 S.W.2d 19 (1967).

If the insured in good faith answers questions which are ambiguous, doubtful, or obscure, the representations will be construed in his favor, and against the insurer. Likewise, if the inquiry is so framed that it does not clearly inform the insured of its meaning, and he may have been honestly mistaken as to what was intended, and his answer, by fair and reasonable construction, may be considered a true one in response to the question as he understood it, such interpretation will be given, and a forfeiture precluded. 7 Couch, Insurance 2d Ed. § 35: 145 at 164.

In Dariano, Adm'x v. Blacksom and Allstate Ins. Co., 389 Pa. 96, 132 A.2d 186 (1957) the plaintiff had obtained judgments for injuries arising out of an automobile accident. The insurer refused to pay the judgments because of alleged misrepresentations in the application for insurance. On the application, the insured stated that his permit to drive had never been suspended, re-

voked or refused. In fact, he had received from the Pennsylvania Bureau of Highway Safety an "Official Notification of Withdrawal of Motor Vehicle Privileges" which cancelled his privilege to drive in Pennsylvania. The insured was at that time a resident of Virginia and the holder of a Virginia operator's license; therefore, the Pennsylvania notification applied only to the insured's reciprocity privilege to drive in Pennsylvania and did not suspend or revoke his Virginia operator's license. The court stated:

> The only authority which could revoke or refuse any license or permit to drive an automobile would be the authority which granted the license or permit. Such license or permit was issued by the State of Virginia, and had never been revoked or suspended by it. If the insurer-garnishee desired a warranty from the insured that there had not been a withdrawal of motor vehicle privileges by another state by reciprocity statute, it should have made such inquiry.

> * * * Since the insurer drew the application it is clear that such application must be construed most strongly against the insurer, as it framed the questions eliciting the desired information. Id. 132 A.2d at 187–188.

The *Dariano* case is analogous to the instant case. In the instant case, the insured's permit to drive was not suspended or revoked by the authority which granted such permit. The insured of his own volition surrendered his permit to Mr. Rogers as a measure to prevent prosecution of the speeding charge. The court feels it was a reasonable interpretation of question 14 for S. T. Lusby not to consider the agreement with Mr. Rogers to be a revocation or suspension. Mr. Rogers, himself, stated, "I did not suspend or revoke the operator's license of the said Roger Kent Lusby." If MFA desired to ascertain whether the insured has surrendered his operator's license to anyone for any length of time, it should have framed its inquiries so as to clearly elicit such information.

■ Therefore for the above reasons, the court finds that the insured by his agent made no material misrepresentation on the application for insurance with MFA. It is ADJUDGED and ORDERED that the prayer for interpleader be granted. MFA is liable on its policy of insurance with Roger Kent Lusby and will pay all sums hereafter adjudged to be due and owing to the defendants for injuries and damages resulting from the accident referred to herein, the aggregate of such sums not to exceed the amount of the plaintiff's liability on the policy. All parties to this action are hereby enjoined from further prosecuting any pending suits against the plaintiff on account of the accident described, or from instituting like proceedings before this or any other court. Parties may file a claim arising out of the accident described by filing an answer in this suit not later than thirty (30) days from the filing of this judgment. Upon timely demand by any of the parties the court will determine by appropriate procedure the damages suffered by each claimant.

The court being of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, it is accordingly certified by the District Court pursuant to the provisions of 28 U.S.C. § 1292 as an interlocutory decision to be reviewed and determined by the Court of Appeals.

The clerk of this court is directed to send certified copies of this opinion and judgment to counsel of record, any defendants not represented by counsel and to Capt. Steven J. Stillman, Staff Judge Advocate, Department of Air Force, Headquarters 33rd Air Division (CADC) Fort Lee Air Force Station, Fort Lee, Virginia 23801.