The AETNA CASUALTY AND SURETY
COMPANY, Plaintiff,

v.

Carl SCHMITT, Superintendent of Banks,
State of California, and Ronald Whitley,
et al., Defendants.

No. C–77–1364 SC.

United States District Court,
N. D. California.

Aug. 19, 1977.

Michael W. Palmer, Baker & McKenzie, San Francisco, Cal., for Aetna Cas. & Sur. Co.

Mervin R. Samuel, Deputy Atty. Gen., San Francisco, Cal., for Carl Schmitt, Superintendent of Banks of State of Cal.

Marshall B. Grossman, Schwartz, Alschuler & Grossman, Los Angeles, Cal., for Ronald Whitley.

Marlen D. Ard (House Counsel), San Francisco, Cal., for Pacific Telephone & Telegraph Co.

## ORDER

CONTI, District Judge.

The issues in this interpleader action are whether the court has jurisdiction, and if it does, whether the court can and should abstain so as to allow a pending state action to proceed.

The action is brought by Aetna Casualty and Surety Company, surety on a bond executed in favor of the California Superintendent of Banks and at the request of the principal, Universal Money Order Company. Aetna names as defendants various parties purportedly having an interest in the proceeds of its bond. These include Carl Schmitt, the Superintendent of Banks; Ronald Whitley, a California resident, "purchaser" of money orders issued by Universal, and named representative of an as-yet uncertified class of purchaser-plaintiffs in the pending California suit,[1] Pacific Telephone and Telegraph Company, a California

---

1. Whitley is sued in his individual capacity and not as representative of the plaintiff-class.

corporation with principal offices in California, and holder and payee of a substantial number of Universal money orders aggregating in value in excess of $300,000; The Jewell Box, an Arizona business, holder of a Universal money order with a face value of $40.40; Universal itself, which is a New Jersey corporation with principal place of business in New York City, but formerly licensed in California where it did substantial business; and additional claimants whose specific identities are unknown, who are purchasers, payees and/or holders of Universal money orders. This defendant class includes both residents and nonresidents of California.

The thrust of the complaint is to determine the extent of plaintiff Aetna's liability, if any, and to allocate equitably among the various claimants the proceeds of the bond. Ancillary to that purpose, Aetna prays the court for relief which among other things would require the claimants to file claims with the court within 60 days or be forever barred; would extinguish plaintiff's further liability on account of the bond; and pursuant to 28 U.S.C. § 2361 would restrain "defendants and any other person . . . claiming under Bond No. S 22867 BCA . . . from instituting or prosecuting an action or any proceeding in any State or United States Court against plaintiff on account of said bond."

Aetna's bond, subsequently increased to $1,500,000, was deposited in 1972 with the Superintendent of Banks as required by California law.[2] As a corporation formerly engaged in the business of selling money orders in California and other states, deposit of this security bond by Universal was a precondition to licensure in California; the bond guaranteed the faithful transmission of all money received by Universal, and its proceeds by statute constitute a trust fund for the benefit of such persons as deliver money to Universal for transmission.[3] Uni-

versal retained its license until July 1, 1976, although it continued to sell money orders and transmit money in California thereafter. On January 6, 1977, it defaulted on money orders issued while unlicensed having a face value in excess of $10,000,000; the majority of these were issued and sold in California. Universal again was licensed on January 10, 1977, but it filed a petition for reorganization in federal court in New York concurrent with the issuance of an order by the Superintendent on January 12, 1977, finding Universal to be in violation of state law and in such condition that it was "unsound, unsafe, and inexpedient" for it to transact business. The Superintendent made demand on Aetna for the face amount of the bond, intending to make partial payment to each person protected by it. Approximately 80,000 claims have been filed with him so far, a substantial number by nonresidents of California. Actual and potential claims aggregate well in excess of the value of the bond.

On May 16, 1977, defendant Whitley filed a class action on the bond in state court against Aetna.[4] The class is defined as "all other persons who have purchased Universal Money Orders within the past two years which are now worthless by reason of the insolvency of the issuer." Each member of the class is elsewhere alleged to have been at all material times a resident of California. The plaintiffs seek damages and a declaration that Aetna is liable for the full face amount of the bond.

Aetna presently seeks a temporary restraining order, preliminary injunction, and an order staying or restraining prosecution of any actions on the bond, specifically including the *Whitley* case. Defendant Whitley, whose arguments have been adopted by the California Attorney General on behalf of the Superintendent of Banks, moves the court to dismiss plaintiff's action for lack of subject matter jurisdiction, or to abstain.

---

2. Cal.Fin.Code § 1800 *et seq.* Similar bonds were executed by Aetna in other states pursuant to the requirements of those states. Federal courts in several of these states have issued restraining orders such as those sought in this case against persons suing on those bonds.

3. Cal.Fin.Code § 1813 (West 1968).

4. The State of California also was named as a party-defendant for procedural reasons but no liability was asserted against it.

## JURISDICTION

■ Plaintiff predicates jurisdiction on the federal interpleader statute, 28 U.S.C. § 1335, and, alternatively, upon the federal diversity statute, 28 U.S.C. § 1332. It is clear that each and every claimant does not meet the $10,000 amount in controversy requirement of section 1332, nor is there total diversity of citizenship. The court therefore lacks jurisdiction under that statute. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806).

■ Although section 1335 requires that there be at least two claimants who are adverse to each other as to the fund or stake in controversy, *e. g., Hebel v. Eberson*, 543 F.2d 14 (7th Cir. 1976); *New York Life Insurance Co. v. Lee*, 232 F.2d 811 (9th Cir. 1956), and that they be of diverse citizenship, total diversity is not necessary. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). These requirements are met: Whitley asserts claims adverse to those of other claimants to the fund, inasmuch as the aggregate claims against the stakeholder exceed the limits of the stakeholder's liability; his citizenship is diverse from that of Universal, The Jewel Box, and the unknown nonresident claimants.[5]

The deposit requirement of section 1335 also has been met: Aetna has filed with the court a bond for $1,500,000. Defendants object that since the bond shows as surety the Standard Fire Insurance Company, a wholly owned subsidiary of Aetna, it legally is insufficient for jurisdiction. *See Aetna Insurance Co. v. Robertson*, 127 Miss. 440, 90 So. 120, 122–23 (1921); Restatement of the Law of Security ch. 9, § 187, at 520. Defendants do not question either Aetna's or Standard's solvency, nor contend that either does not stand ready and able to perform to the extent of its liability. Nor do they suggest that the court cannot in fact compel either to perform should either fail to do so voluntarily. Defendants object simply to the formal relationship.

■ The interpleader statute, however, is not so rigid, leaving to the proper discretion of the court to require "such security" as it may. The statute directs the court's concern to the reality of the protection afforded, not its form. For whatever hypothetical peril of nonperformance there may be in Aetna's promise, Standard's guarantee is ample safeguard. Standard is independently able to pay, independently legally obligated to pay, and independently subject to the court's power beyond any question of Aetna's capacity to interpose. The court is satisfied that the claimants are protected, and therefore accepts the Standard bond as sufficient to establish jurisdiction.

■ Accordingly, as the amount in controversy is in excess of $500, the court has jurisdiction under section 1335.[6]

## ABSTENTION

This action against the California Superintendent of Banks, and others, is on a surety bond required by California law as a precondition to California licensure of the

---

5. Even were the court to disregard Universal, which may be protected against this suit by proceedings in the Bankruptcy Court, the claims of The Jewel Box and of the nonresident claimants are real, actively asserted, and sufficient in substance to satisfy jurisdictional requirements under the circumstances of this case. *See New York Life Ins. Co. v. Lee, supra; cf. Dunbar v. United States*, 501 F.2d 506 (5th Cir. 1974).

6. The court sees no reason why it should dismiss this action for lack of "equity jurisdiction" apart from considerations which best are subsumed in the discussion of abstention below. Though equitable considerations may be relevant to questions of abstention, dismissal on grounds of administrative expediency, or the propriety of relief, those present in this case are not of a kind or weight as would preclude jurisdiction. The court may reach the merits if it deems it proper to do so. Compare, *e. g., Hunter v. Federal Life Ins. Co.*, 111 F.2d 551 (8th Cir. 1940), *and Mutual Life Ins. Co. of New York v. Egeline*, 30 F.Supp. 738 (N.D.Cal. 1939), *with, e. g., MFA Mutual Ins. Co. v. Lusby*, 295 F.Supp. 660 (W.D.Va.1969). To the extent that for purposes of jurisdiction plaintiff must meet equitable requirements additional to the statutory requirements of section 1335, they are found to be met.

principal. The extent of the Superintendent's power to recover the full value of the bond as a precursor to distribution of its proceeds among those having valid claims against the principal has never been decided by a state court. That question is now at issue there, having been raised prior to Aetna's filing this action by defendant Whitley on behalf of a class of purchasers of Universal's money orders.

The question presents a significant issue of state policy whose import transcends the result which may be reached in the case at bar. Evidence is given of its ultimate reach and vitality by the large number of claimants in this single case, many of whom, it may be assumed, were of limited financial means and particularly susceptible to injury by Universal's default. It should be noted that the licensure statutes are not limited to money order transactions, but apply to any person in the business of receiving money for the purpose of transmitting that money outside the state. As the efficacy and compass of the comprehensive regulatory scheme enacted by California would seem to turn in major degree on the answer which may be made, the decision here may affect not only these parties and other undercapitalized financial institutions, but perhaps also California's efforts to prevent consumer fraud. *Cf.* Cal.Fin.Code § 1800.

Nor is the answer a state court might give easy to predict. This court's uncertain conclusion, if erroneous, could prove impermissibly disruptive of the state's efforts to formulate and effect its policy, and, given the tens of thousands of claimants here affected, impermissibly restrictive of the exercise of authority which may be vested in state officers. A proper regard for harmonious federal-state relations, therefore, appears to compel abstention. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *cf. Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).[7]

But plaintiff contests this deduction, citing important countervailing considerations. In particular, it contends that the *Whitley* case will not adjudicate the rights of all claimants, thus subjecting it to the probability of multiplicious litigation and the possibility either of being found liable beyond the limits of its bond, or of risking depletion of the available fund in a non-pro rata manner unfair to other claimants. Aetna maintains that the "purchaser" class in the *Whitley* action does not include later transferees and holders of Universal money orders, such as Pacific Telephone & Telegraph, and that the California court, in any event, cannot exercise jurisdiction over claimants whose only contact with California is the "pure happenstance" of having received a money order sold in California.[8] It was to remedy just such problems as this, Aetna argues, that the federal interpleader statute was enacted; this strong expression of federal policy favoring a federal forum, it may be inferred, should take precedence over any concern for state process or policy.[9]

---

7. The *Colorado River Water* case disposes of plaintiff's contention that federal courts should abstain from construing a state statute only when the adjudication of a federal constitutional issue can be avoided thereby. *See also* C. Wright, Handbook of the Law of Federal Courts § 52 (3d ed. 1976).

8. The fact that the pending state action is a class suit does not obviate the need to meet due process requirements.

 [A]n action involving non-resident plaintiff class members raises essentially the same jurisdictional problem as one involving a non-resident defendant. In both situations, unless a court can validly exercise jurisdiction over the foreign parties, it will dismiss an action which seeks to determine their legal rights.

 Note, *Multistate Consumer Class Actions*, 25 Hast.L.J. 1411, 1423–24 (1974); *see International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

9. Despite this claim, this case does not present the classic interpleader situation for which the statute was designed:

 The insurance problem envisioned at the time was that of an insurer faced with conflicting but mutually exclusive claims to a policy, rather than an insurer confronted with the problem of allocating a fund among various claimants whose independent claims may exceed the amount of the fund.

 The scope of Whitley's class of "purchasers" is a difficulty easily resolved. The case arises in a context of money order transactions. Accordingly, it is governed by the California Commercial Code. "Purchaser", therefore, is a term of art, defined in section 1201(33) as any person who takes by purchase. "Purchase" includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property. Cal.Comm.Code § 1201(32). This definition is fully adequate to include all of the various categories of subsequent takers which plaintiff suggests exist.[10] Whitley's allegation that all such purchasers are residents of California seems unlikely given the presence of The Jewel Box before this court, but the allegation is not included in his definition of the class and does not operate to limit its scope.

The reach of California's "long-arm" statute is only somewhat less clear. While jurisdiction "on any basis not inconsistent with the Constitution of [California] or of the United States" is authorized, Cal.Code Civ. Proc. § 410.10, it is contended that many potential claimants have insufficient "contacts" with California to make a binding adjudication of their rights constitutional. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945). The mere fact that a Universal money order has come to rest after passing through its chain of transfer, it is contended, does not create between the individual now holding the instrument and the State of California such a relationship as will support jurisdiction. Such relationship as may exist is neither purposefully created, *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), nor so substantial that exercise of state power over the claimant would comport with "traditional notions of fair play and substantial justice." And failing such power, Aetna contends, it is exposed to the risk of double liability.

The court disagrees. The cause of action in this case is on Aetna's bond, not the money orders themselves. The fortuitousness of the path by which the money orders travelled to each claimant is not determinative of the strength of his contact with the state, for to recover on the bond at all, it would seem, he must directly assert his claim in a state forum. His right to recover appears conditioned on amenability to state process. *See* Cal.Fin.Code § 1813.

Even if his right to recover is not so conditioned, adequate contacts exist. If Aetna's obligation is regarded as a *res*, a not unreasonable conclusion in view of the statutory language requiring, at the licensee's option, delivery of the surety bond "in lieu of" a deposit of money or securities, *see id.* § 1812, the location of that property on deposit with the State Superintendent of Banks and State Treasurer indicates that every potential claimant expected to benefit from state protection of his interests. The state's strong interests in preventing consumer fraud, in protecting customers of state licensed businesses against loss of

---

*State Farm Fire & Cas. Co. v. Tashire, supra*, 386 U.S. at 533 n. 15, 87 S.Ct. at 1205; *see id.* at 534–35, and n. 16, 87 S.Ct. 1199. Interpleader was never intended to function as an all-purpose "bill of peace," *id.* at 535–36, and this fact considerably weakens the force of any argument from federal policy.

10. A money order may be either a negotiable or a non-negotiable instrument. *People v. Norwood*, 26, Cal.App.3d 148, 103 Cal.Rptr. 7, 11 U.C.C.R.S. 118 (1972); *see Nation-Wide Check Corp. v. Banks*, 7 U.C.C.R.S. 43 (D.C.Cir. 1969); *Comet Check Cashing Service, Inc. v. Hanover Ins. Group*, 5 U.C.C.R.S. 853 (N.Y.Civ.Ct.1968); *cf. Garden Check Cashing Service, Inc. v. First National City Bank*, 25 A.D.2d 137, 267 N.Y.

S.2d 698, 3 U.C.C.R.S. 355 (1966). If negotiable, *see* Cal.Comm.Code § 3104, "purchaser" includes "holder": "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder." *Id.* § 3202; *see id.* § 1201(20); *cf.* 2 R. Anderson, *Uniform Commercial Code* § 3–104:20 (1971 & Supp. 1974). If not negotiable, "purchaser" still will include virtually all later transferees of the money orders, as they will have acquired their interest by some sort of voluntary transaction. *See* Cal.Comm.Code §§ 3201 and Official Comments 1 and 2, 3805 and Official Comment; *Comet Check Cashing Service, Inc. v. Hanover Ins. Group, supra; cf.* 2 R. Anderson, *Uniform Commercial Code* § 3805 (1971).

money delivered to them for transmission out of state, and in establishing a procedure for resolution of claims to that property, also would support jurisdiction, as would the likelihood that important records and witnesses will be found in the state. *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *cf. Atkinson v. Superior Court*, 49 Cal.2d 338, 316 P.2d 960 (1957).

The significance of these expectations and interests is established, if there be room for doubt, by the fact that the statutory bonding requirement seems specifically intended to provide a sure means of remedy by substituting for the property delivered to the transmitter and intended to be removed from the state (*i. e.*, the money), a second form of property statutorily confined within the state (the bond). It would defeat the purposes of this statutory scheme if the power of the state to provide this remedy were regarded as dissipating into an out-of-state void along with the lost money.

Adequate contacts to support jurisdiction also exist if the court does not consider the bond to be a *res*. In this frame of reference, the argument against state jurisdiction runs, the bond is merely a contract by which Aetna stands liable for certain losses which may derive from Universal's failure to faithfully perform its obligations. The claimant, then, sues not to establish its right to property but to performance, and its right to performance is confined to those rights which pertain to possession of a Universal money order. Similarly, the power of the state court to affect a potential claimant's right to performance is dependent on its ability to assert power over a person and not a thing, an ability which hinges on the weight one attaches to the claimant's status as a money order transferee.

■ Yet once again a state statutory scheme defines the transferee's rights and indicates his expectations. Money orders are instruments created pursuant to state law, and the rights of any transferee to claim under such an instrument is controlled by state law. Any person who accepts a money order purchased in California necessarily does so in the expectation that if he is forced to sue on the instrument, California law will protect him. His act of accepting a money order instrument is no mere happenstance event, however casually his acceptance of it might occur, but a deliberate availment of the benefit of California law, which accords to him all rights held by the person from whom he took. Cal.Comm.Code § 3201. Indeed, contentions to the contrary are belied by the very casualness with which the act is done, for it is only because the claimant has confidence that California will protect him that he will readily accept instruments originating in it. The needs of state commerce compel easy transmission of funds and the state's interest in maintaining an unimpeded flow of money is strong. By accepting a Universal money order every potential claimant established a relationship with the State of California which makes exercise of its jurisdiction over him wholly proper.

■ There remains only the issue of whether the federal interest in providing a forum should take precedence.[11] Since the state can bind all potential claimants with its decision, any federal interest based on providing protection against double liability is obviated. The state forum is fully competent to protect whatever remaining federal interest Aetna might assert; procedures in California courts for the fair resolution of class claims are well-established and expeditious. There is no issue of federal law or right. In short, there is no reason why the court should not give effect to considerations of comity, and, therefore, it abstains.

### DISMISSAL

■ But the court's refusal to entertain this case need not rest on abstention grounds alone. Assuming abstention is for some reason improper in a case such as this,

---

11. *See* note 9 *supra.*

considerations of wise judicial administration still compel dismissal. Despite the court's "virtually unflagging obligation . . . to exercise the jurisdiction given," two exceptional circumstances are present in this case which, carefully considered, justify dismissal. *Colorado River Water Conservation District v. United States, supra* 424 U.S. at 817, 96 S.Ct. at 1246.

First, if Aetna's bond is regarded as property, as it is by this court, then jurisdiction was first asserted over it by a state court. Federal courts will rarely accept cases in such circumstances.

Second, the federal forum is more inconvenient to the parties than is the state forum. Although both are equidistant from most potential claimants, at least 80,000 claimants would be burdened with having to file in federal court claims already filed with the State Superintendent. A means would have to be found for representing the interests of the claimant-class, interests now represented capably in state court by defendant Whitley. While these tasks could be managed, the extensive prior involvement of both the State and other parties, and the waste of labor which permitting interpleader would cause, are ample reasons to decline jurisdiction in a case of this magnitude.

To the extent that abstention is improper, therefore, this case is dismissed on grounds of administrative propriety. *Id.* at 817–19, 96 S.Ct. 1236.

Judgment shall be entered accordingly.[12]

---

**12.** Whatever constitutional right Aetna may have to a federal forum in other circumstances, it does not avail them here. The Supreme Court's affirmance of a power in the court to dismiss notwithstanding both jurisdiction and lack of grounds for abstention demolishes Aetna's constitutional claim given the circumstances here. *Colorado River Water Conservation District v. United States, supra.*