**6247 ATLAS CORPORATION and the Merchants Bank of New York, Plaintiffs,**

**v.**

**The MARINE INSURANCE CO., LTD., NO. 2 A/C, the Threadneedle Insurance Co., Ltd., the Threadneedle Insurance Co., Ltd., A A/C, Indemnity Marine Assurance Co., Norwich Union Fire Insurance Society, Ltd., No. 1M A/C, Norwich Union Fire Insurance Society, Ltd., No. 1 A/C, Sovereign Marine & General Insurance Co., Ltd., S 81, the Tokio Marine & Fire Insurance Co. (UK), Ltd., Taisho Marine & Fire Insurance Co. (Europe), Ltd., and Storebrand Insurance Co. (UK), Ltd., Subscribing to Policy of Insurance Number 4S/00349/91, and Henry Raymond Dumas, an Underwriter at Lloyd's, London, on Behalf of Himself and All Those Other Lloyd's Underwriters Subscribing to Policy of Insurance Number 4S/00723/91, Defendants.**

No. 92 Civ. 7064 (RWS).

United States District Court,
S.D. New York.

April 26, 1994.

Mahoney & Keane, New York City by Edward A. Keane, Lionel R. Saporta, of counsel, for plaintiff.

Abrams & Martin, P.C., New York City by Daniel J. Friedman, Allen A. Kolber, of counsel, for defendants.

Weg and Myers, P.C., New York City by Debra Ruth Wolin, Barbara Matarazzo, of counsel, for Isaac Klein, Statewide Imports, Benjamin Dimenstein & Isaac Waldman.

## OPINION

SWEET, District Judge.

Defendants Marine Insurance Co., Ltd., No. 2 A/C, The Threadneedle Insurance Co., Ltd., A A/C, Indemnity Marine Assurance Co., Norwich Union Fire Insurance Society Ltd., No. 1M A/C, Norwich Union Fire Insurance Society, Ltd., No. 1 A/C, Sovereign Marine & General Insurance Co., Ltd. S 81, The Tokio Marine & Fire Insurance Co. (UK), Ltd., Taisho Marine & Fire Insurance Co. (Europe), Ltd. and Storebrand Insurance Co. (UK), Ltd. (the "Primary Insurers"), subscribing to Policy of Insurance Number 4S/00349/91 and Henry Raymond Dumas, on behalf of himself and all Lloyd's Underwriters (the "Excess Insurers") subscribing to Insurance Policy Number 4S/00723/91 (collectively, the "Defendants" or the "Atlas Underwriters") move by Order to Show Cause for an order to join, pursuant Fed.R.Civ.P. Rule 19, all of the creditors of 6247 Atlas Corporation ("Atlas") and those having a claim against Atlas or the insurance proceeds which are the subject of this action (the "Claimants" or "Memoholders"). In the alternative, the Defendants seek an order to

interplead the absent claimants, pursuant to Fed.R.Civ.P. Rule 22.

For the reasons set forth below, Defendants' motion to join is denied. The Defendants' motion to interplead is granted.

### The Parties

Plaintiff Atlas, a dealer in precious stones, metals and jewelry, is a New York corporation with its principal place of business located at 2 West 46th Street, Suite 702, New York, New York (the "Premises").

The Merchants Bank of New York (the "Bank"), a corporation chartered under the laws of New York State, is a secured creditor of Atlas.

The Primary Insurers are a syndicate of insurance companies which underwrote a jewelers block policy, number 4S/00349/91 (the "Primary Policy"), for a 12 month period beginning on approximately February 7, 1991. The Primary Policy extended insurance coverage to Atlas, as the "assured" party, and to the Bank as the "loss payee," against risks to Atlas' goods while on the Premises up to a maximum of $1,000,000. The Primary Policy had a $10,000 deductible. An additional endorsement to the Primary Policy was issued for another $1,000,000.

The Excess Insurers issued to Atlas excess insurance coverage under policy number 4S/00723/91 (the "Excess Policy") which extended additional coverage in the amount of $1,000,000. The Excess Policy incorporated all terms and provisions of the Primary Policy, and Atlas' total coverage was thus $3,100,000, less a $10,000 deductible.

Isaac Waldman, Inc., Isaac Klein, Inc., Benjamin Dimenstein and Statewide Imports, Inc. (the "Waldman Memoholders") are New York residents or corporate resident who oppose Atlas Underwriters' attempts to join or interplead them into this action. The Waldman Memoholders are plaintiffs in a New York state court action against Atlas and certain Lloyd's underwriters subscribing to cover note number JB 9100638–081, insurance policy number 834/JB7010050–720, cover note number JB 9100630 and insurance policy number F12MA9000 for the loss of certain items which were located on the Premises on June 25, 1991. *See* Waldman Memoholders' Affirmation, Jun. 6, 1993, Ex. B (*Statewide Imports, Inc. v. Those Certain Underwriters at Lloyd's*, 29148–92, Summons and Compl. filed on Oct. 26, 1992).

### Prior Proceedings and Facts

On June 25, 1991 a burglary allegedly took place on the Premises. Atlas has made a claim against the Atlas Underwriters for the maximum $3,100,000 coverage provided under the Primary and Excess Policies. Atlas contends that more than $3,100,000 worth of precious stones, metals and jewelry were stolen during the alleged burglary. In its claim, Atlas lists 37 entities who are purported to have consigned goods to Atlas' Premises at the time of the alleged burglary.[1]

---

1. The consignors are: Diacorp, Inc.; Zedco Diamonds Corp., N.Y., d/b/a SK Diamonds; Kelso Diamond Co., Inc.; Dialite Import Corp.; Joseph Chai Corp.; Eknam Diamond, Inc.; Bon Almaz, Ltd.; Kothari Gems, Ltd.; Kothari Ent., Inc.; Luba Corp.; Simcha Felsenburg; Bhumish Diamonds India, Inc.; Sancy Trading, N.Y., Inc.; Shimon Wernon; A. Moskowitz; East Continental Gems, Inc.; Dov Fastag, Inc.; M.A. Diamond; Hamid Sedashut; Herzal–Customer–99; Ideal Brilliant Co., Inc.; M.S. Jain, Inc.; D. Navinchandra & Co.; Columbia Color Stones; Mayon Diamonds; T & T Diamonds; Isaac Waldman; Yohai Haim; J. Shree Corp.; Michael Hezkia; Royal Diamond, Inc.; Krishna Gems, Inc.; Solom Lipschutz; J.K. Trading Co.; Statewide Imports, Inc.; Paras Diamond Corp.; and Impex Diamonds Corp.

The following merchants have made claims against the Atlas insurance proceeds: Occidental Gems d/b/a Occigems; Isaac Klein; M & A Francies Co., Inc.; Aron Knobloch, Inc.; Ahdout Trading Corp.; Samet & Shine Diamond Co., Ltd.; Orient Stones & Minerals, Inc.; Gordon J. Bares, Inc.; Gregric Diamonds; E.M. Shoreman; Precious Trade, Inc.; Deity Gem; L.I.D. Israel; Lotus Exim Int'l, Inc.; All–Shape Diamond, Inc.; Benjamin Dimenstein; Isaac Waldman; and Lotus Diamonds.

The Atlas Underwriters have been served with a restraining notice by the J.K. Trading Co. for $39,338.62.

Fourteen entities have stipulated to voluntarily intervene in this action: Kothari Enterprises, Inc.; Aron Moskowitz; Ideal Brilliant; Mayon Diamonds; Michael Cohen d/b/a Columbia Color Stones; Paras Diamond Corporation; Luba Corp.; M.S. Jain; J.K. Trading; East Continental Gems, Inc.; Lotus Diamonds, Inc.; Dialite Import Corp.; Bon Almaz, Ltd.; and Simcha Felsenberg.

**458**

The Defendants have denied liability on the theory that the June 25, 1991 loss was fraudulent and, additionally, that Atlas has otherwise breached the terms and conditions of their insurance policies.

In their original Order to Show Cause, the Defendants sought to join the following remaining memoholders as plaintiff-intervenors, pursuant to Rule 19, Fed.R.Civ.P.:

Diacorp, Inc.

Zedco d/b/a SK Diamonds

Kelso Diamond Co., Inc.

Josef Chai Corp.

Eknam Diamond, Inc.

Kothari Gems

Sancy Trading N.Y., Inc.

Shimon Wernon

Dov Fastag, Inc. a/k/a Pavillion, Inc.

M & A Diamond

Hamid Sedashut

Roy Herzl, Inc.

D. Navinchandra & Co.

Isaac Waldman

T & T Diamonds

Yohai Haim

J. Shree Corp.

Michael Hezkia Co., Inc.

Royal Diamint, Inc.

Krishna Gems

Solomon Lipshutz

Statewide Imports

Impex Diamond Corp.

Occidental Gems d/b/a Occigems

Isaac Klein

M & A Fancies Co., Inc.

Aron Knobloch, Inc.

Samet & Shine Diamond Co., Ltd.

Orient Stones & Minerals, Inc.

Gordon J. Bares, Inc.

Gregric Diamonds

E.M. Shoreman

Precious Trade, Inc.

Deity Gem

L.I.D., Israel

All–Shape Diamond, Inc.

Benjamin Dimenstein

Only the four Waldman Memoholders have opposed the Defendants' motion. Upon briefing of the issue, Defendants modified their pleadings to request the Court's permission to file a defensive counterclaim of Interpleader, pursuant to Fed.R.Civ.P. Rule 22.[2]

The Order to Show Cause was filed on October 20, 1993 and was argued on February 16, 1994. The motion was considered fully submitted at that time.

*Discussion*

**I.** *Defendants' Motion to Join Absent Parties is Denied*

**A.** *The Legal Standards of Rule 19 Joinder*

Joinder of absent parties under Rule 19, Fed.R.Civ.P., provides in pertinent part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

(b) **Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dis-

**2.** Defendants cite *United States v. Commercial Bank of N. Am.*, 31 F.R.D. 133, 135–36 (S.D.N.Y. 1962), for the proposition that the Court has the authority to treat Defendants' pleadings as a motion under any of Federal Rules of Civil Procedure, Rules 18 through 24, relating to joinder or intervention of parties.

missed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ Rule 19, thus, requires the court to ask two questions: first, under Rule 19(a), the Court is required to ask whether the proposed party is "necessary" to the action, that is to say, whether the party should be joined if feasible; if the proposed party cannot be joined, then Rule 19(b) is triggered, which poses the question of whether the court could, "in equity and good conscience, proceed in the party's absence." *See Ente Nazionale Idrocarburi v. Prudential Sec. Group*, 744 F.Supp. 450, 456 (S.D.N.Y.1990). If the Court determines that the case may not proceed in the party's absence, the party is considered "indispensable," and the action should be dismissed.

■ Under Rule 19(a), the Court must decide if the potential joiners are first, subject to service of process and second, if their joinder will not deprive the court of jurisdiction. However, several courts have ruled that "the concept of indispensability does not concern the Court's subject matter jurisdiction as much as it deals with the ability or right of the Court to make an adjudication[:] The major question is whether the court can render a decision which will not impair the rights of the absent party." *Ente Nazionale Idrocarburi v. Prudential Sec. Group*, 744 F.Supp. at 456 (citing 3A James WM. Moore et al., Moore's Federal Practice ¶ 19.05[2] n. 6 at 19–77); *see also Lipton v. Nature Co.*, 781 F.Supp. 1032, 1034 (S.D.N.Y.1992) (stating "the Rule 19 motion regarding indispens-ability of parties ... [is] addressed to the court's equitable discretion. Necessary and indispensable parties can only be determined in the context of the particular litigation; the inquiry must be a fact-based one.").

■ The Supreme Court has summarized the four factors which must be considered pursuant to the Rule 19(b) in determining whether a litigation may proceed in the absence of an indispensable party as follows: (1) whether the party sought to be joined has an interest in having a forum and whether an adequate alternate forum exists; (2) the interest of the party seeking joinder in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability that he shares with another;" (3) "the interest of the outsider whom it would have been desirable to join;" (4) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–39, 19 L.Ed.2d 936 (1968) ("*Provident Tradesmens*"); *see also Klockner Stadler Hurter, Ltd. v. Insurance Co. of Pennsylvania*, 785 F.Supp. 1130, 1133 (S.D.N.Y.1990) (discussing *Provident Tradesmens* analysis of Rule 19(b)'s four factors); *Ente Nazionale Idrocarburi v. Prudential Sec. Group*, 744 F.Supp. 450, 458–62 (S.D.N.Y.1990) (same).

### B. *28 U.S.C. § 1367(b) Bars Supplemental Jurisdiction*

■ Here, the Defendants seek to join the four Waldman Memoholders as involuntary party-plaintiffs on the theory that the absent memoholders' interests are most aligned with the current Plaintiffs.[3] However, the Defendants are explicitly prohibited from doing so under section 310(a) of the Judicial Improvements Act of 1990, Pub.L. 101–650, 104 Stat. 5089, codified at 28 U.S.C. § 1367, effective December 1, 1990. The "supplemental jurisdiction" statute authorizes federal jurisdiction over additional claims and parties, but prohibits the exercise of such jurisdiction in

---

**3.** Although the Defendants have not so requested, it must be noted that the joinder of the absent memoholders with the Defendants would destroy diversity jurisdiction as the absent memoholders, Atlas and the Bank are all considered New York citizens, *see* Defs.' Order to Show Cause Ex. 4, for the purposes of this motion. *See* 28 U.S.C. § 1332.

diversity cases over non-diverse parties to be joined as plaintiffs under Rule 19.

In any civil action of which the district courts have original jurisdiction founded solely on section 1332 [diversity] of this title, the district courts shall not have supplemental jurisdiction ... over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules....

28 U.S.C. § 1367(b).

Although the Second Circuit has yet to construe 28 U.S.C. § 1367(b), several federal courts have read this statute to bar the extension of supplemental jurisdiction under the enumerated rules. *See, e.g., Krueger v. Cartwright,* 996 F.2d 928, 932–33 (7th Cir. 1993) (vacating district court's joinder of a party-plaintiff under Rule 19(a) in light of 28 U.S.C. § 1367 and dismissing action as party-plaintiff is indispensable within the meaning of Rule 19(b)); *Janney Montgomery Scott v. Shepard Niles,* 11 F.3d 399, 412 n. 15 (3d Cir.1993) (finding supplemental jurisdiction impermissible pursuant to 28 U.S.C. § 1367 under Rule 14 impleader; also denying joinder under Rule 19); *Lederman v. Marriott Corp.,* 834 F.Supp. 112, 114 (S.D.N.Y.1993) ("Under 28 U.S.C. § 1367(b), however, in cases where jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332, supplemental jurisdiction is inapplicable to claims by plaintiffs against

persons made parties under Fed.R.Civ.P. 19 (which governs additions of further parties to a complaint.)"); *Mayatextil, S.A. v. Liztex United States, Inc.,* 92 Civ. 4528, 1993 WL 180371, *2–3, 1993 U.S.Dist. LEXIS 6527 * *5–9 (S.D.N.Y. May 18, 1993) (extending 28 U.S.C. § 1367(b) supplemental jurisdiction bar to Rule 13(h) which provides for addition of parties "in accordance with the provisions of Rules 19 and 20"); *Lynch v. TCM America, Inc.,* 91–CV–2219, 1991 U.S.Dist. LEXIS 18952 (E.D.N.Y. Dec. 13, 1991) (holding 28 U.S.C. § 1367(b) prevents plaintiffs from joining additional litigants pursuant to Rule 20).

Thus, as 28 U.S.C. § 1367(b) bars the Defendants from joining the absent memoholders as party-plaintiffs under Rule 19(a), it would appear that the Court need not address, at this time, the second level of inquiry under Rule 19(b)—as to whether the absent parties are indispensable—in the absence of a formal motion to dismiss for failure to join indispensable parties. Accordingly, the Defendants' motion to join the absent memoholders, pursuant to Fed.R.Civ.P. Rule 19 is denied.

## II. The Defendants May Assert Defensive Interpleader Pursuant to Rule 22

### A. The Legal Standards of Rule 22 Interpleader

"Rooted in equity, interpleader is a handy tool to protect a stakeholder [4] from multiple

---

**4.** N.Y.Civ.Prac.L. & R. § 1006 (McKinney's 1976), the state law provision for interpleader provides the following definitions:

(a) **Stakeholder; claimant; action of interpleader.** A stakeholder is a person who is or may be exposed to multiple liability as the result of adverse claims. A claimant is a person who has made or may be expected to make such a claim. A stakeholder may commence an action of interpleader against two or more claimants.

(b) **Defensive interpleader.** A defendant stakeholder may bring in a claimant who is not a party by serving upon such claimant a summons and interpleader complaint' and all prior pleadings served in the action.

(c) **Effect of pendency of another action against stakeholder.** If a stakeholder seeks to bring in a claimant pursuant to subdivision (b) and there is pending in a court of the state an action between the claimant and the stakehold-

er based upon the same claim, the appropriate court, on motion, upon such terms as may be just, may dismiss the interpleader complaint and order consolidation or joint trial of the actions, or may make the claimant a party and stay the pending action until final disposition of the action in which interpleader is so granted, and may make such further order as may be just.

New York's interpleader statute contemplates a stakeholder who is an interested party, although some courts have indicated that the stakeholder might be required to be "disinterested" and have "conceded liability." *See, e.g., Septembertide Pub., B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 683 (2d Cir.1989) (discussing the taxation of attorneys fees and costs in an interpleader action involving a disinterested stakeholder).

The prevailing point of view, however, is that since the plain language of Rule 22 renders the historical requirement that a plaintiff, or defendant, is no longer required to "aver[] that the

liability and the vexation of defending multiple claims to the same fund." *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993) (citations omitted). There are two forms of interpleader: rule interpleader, as set forth in the Federal Rule of Civil Procedure 22; and statutory interpleader, as set forth in 28 U.S.C. § 1335.

Rule 22 of the Federal Rules of Civil Procedure provides in relevant part "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.... *A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.*" Fed.R.Civ.P. Rule 22 (emphasis added).

■ Rule interpleader requires subject matter jurisdiction based either upon a general federal question or diversity of citizenship, as provided in 28 U.S.C. §§ 1331, 1332, between the stakeholder and the claimants, and an amount of controversy that exceeds $50,000. *See* Fed.R.Civ.P. Rule 22; 7 Charles A. Wright et al., Federal Practice and Procedure § 1703 at 493 (2d ed. 1986). Under Rule 22, there is no requirement to deposit the "stake" in question with the Court. A defendant seeking to institute Rule 22 interpleader is merely required to have a nexus with a party in the case. *See John v. Sotheby's*, 141 F.R.D. 29, 33 (S.D.N.Y.1992); *Bankers Trust Co. v. Manufacturers Nat'l Bank*, 139 F.R.D. 302, 308 (S.D.N.Y.1991).

Alternately, statutory interpleader enables a party with "money or property of the value of $500 or more" to invoke interpleader when "two or more adverse claimants, of diverse citizenship ... are claiming or may claim to be entitled to such money or property" and the "plaintiff has deposited such money or property ... into the registry of the court." 28 U.S.C. § 1335. Thus, statutory interpleader relaxes the diversity jurisdictional requirements in exchange for the somewhat onerous requirement of depositing the stake with the Court. *See Ashton v. Josephine Bay & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1068 (2d Cir.1990); *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir.1983); *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1291 (8th Cir.1980); *Life Ins. Co. v. Nava*, 667 F.Supp. 279, 280 (M.D.La.1987).

■ Both rule and statutory interpleader are viewed as a "remedial joinder device" originally designed to protect a stakeholder in an action—who is unsure as to which party has the right to relief or liability over a common fund—by joining absent parties or claimants, in the form of a counter or cross claim, into one single action. 7 Charles A. Wright et al., Federal Practice and Procedure § 1702 at 493 (2d ed. 1986). The Supreme Court, in its definitive opinion on the subject of interpleader, *State Farm & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), has emphasized that interpleader is a "remedial" device to be "liberally construed" for the following reasons:

> Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal

plaintiff [or defendant] is not liable in whole or in part to any or all of the claimants." Fed. R.Civ.P. Rule 22(1). *See also* 3A James WM. Moore et al., Moore's Federal Practice ¶ 22.11 [102–08] (2d ed. 1993) ("The requirement that the stakeholder have no interest in and assert no claim to the subject matter of the dispute was effectively abolished by bestowing upon the federal courts, in Section 1335(a), jurisdiction of any action in the nature of interpleader, provided the specific statutory requirements are met. This

change—as well as its counterpart in Rule 22 quoted above—was soon held not only to afford a federal forum to the stakeholder denying liability in whole or in part, but to afford it without the need for any independent equity other than multiple vexation on account of adverse claims."; "Interpleader should therefore be granted even if it is claimed that the stakeholder is independently liable, and the stakeholder should remain in the proceeding to contest the claim.") (citations omitted).

evils the interpleader device was intended to remedy.

*Id.* at 533, 87 S.Ct. at 1205.

The objectives of interpleader, then, is viewed to be in "harmony with the flexible joinder provisions of the federal rules [of Civil Procedure], and many decisions hold that . . . [interpleader is] remedial in character and should be applied liberally. Thus, the trend, both with regard to statutory revision and judicial interpretation, has been directed toward increasing the availability of interpleader and eliminating those technical restraints on the device that are not founded on adequate policy considerations." 7 Charles A. Wright et al., Federal Practice and Procedure § 1704 at 500–501 (2d ed. 1986) (footnote omitted).

■■ Finally, under the prevailing doctrine of both statutory and rule interpleader, the stakeholder is relieved from the obligation of determining which litigant has a superior claim and forces the claimants to the fund to "contest what essentially is a controversy between them without embroiling" the stakeholder into the action. 7 Charles A. Wright et al., Federal Practice and Procedure § 1702 at 494 (2d ed. 1986) (citations omitted). As such, Rule 22 is "designed to insulate a stakeholder from contradictory judgments and multiple liability and to relieve a stakeholder from having to determine which claim among several is meritorious." *John v. Sotheby's,* 141 F.R.D. 29, 33 (S.D.N.Y.1992) (citing authorities).

■ The three general requirements for the assertion of defensive interpleader are as follows: (1) the defendant "stakeholder" must legitimately fear multiple litigation directed against the fund; (2) two or more of the claimants must be adverse to each other; and (3) the defendant must frame a defensive interpleader by way of a cross-claim or counterclaim.

### B. *Defendants Legitimately Fear Multiple Litigation*

■ The principal standard applied by the Courts for granting interpleader is in circumstances when a stakeholder " ' "legitimately fears multiple [liability] directed against a single fund," ' regardless of the merits of the competing claims." *John v. Sotheby's,* 141 F.R.D. 29, 33 (S.D.N.Y.1992) (citations omitted) (granting interpleader because Sotheby's "legitimately fears" double liability); *see also A/S Krediit Pank v. Chase Manhattan Bank,* 155 F.Supp. 30, 33 (D.N.Y.1957) (noting that "[t]he office of modern interpleader is both to protect against possible double liability to actual claimants and against possibility of vexatious multiple litigation.").

As provided by Rule 22, interpleader is available when a stakeholder "is or may be exposed to double or multiple liability." Fed. R.Civ.P. Rule 22. One of the seminal interpleader cases notes that:

The key to [this] clause . . . is in the words 'may be.' The danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice. At least, it is settled that an insurer with limited contractual liability who faces claims in excess of his policy limits is "exposed" within the intendment of Rule 22. . . .

*Pan Am. Fire & Casualty Co. v. Revere,* 188 F.Supp. 474, 480 (E.D.La.1960); *see also Washington Elec. Co-op. v. Paterson, Walke & Pratt, P.C.,* 985 F.2d 677, 679 (2d Cir.1993) ("[W]hat triggers interpleader is 'a real and reasonable fear of double liability or vexatious, conflicting claims. . . .' ") (quoting *Indianapolis Colts v. Mayor of Baltimore,* 741 F.2d 954, 957 (7th Cir.1984) (collecting citations), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985)); *Grossman v. Mushlin,* 493 F.Supp. 330, 333 (S.D.N.Y. 1980) (quoting *Pan Am. Fire & Casualty Co.,* 188 F.Supp. at 480 for same proposition).

The quintessential interpleader case is one in which an insurer is faced with rival claims which exceed the amount held in a limited fund. In *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), the Supreme Court stated that the:

effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to

one or the other of the claimants. In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.

*Id.* at 534, 87 S.Ct. at 1205.

■ The Defendants contend that a refusal to interplead the additional memoholders will unnecessarily subject them to duplicative and wasteful litigation. Atlas has alleged that more than $6,100,000 million worth of jewelry and valuables was stolen on the date of the loss.[5] Atlas claims that approximately $3,005,000 million of the loss consists of goods consigned to Atlas by 37 memoholders. Another 18 memoholders, as of yet unrecognized by Atlas, are claiming in excess of $1,000,000 under the fund. Atlas has refused to agree to these demands and asserts that the memoholders are not entitled to any of the policy proceeds. Thus, Atlas alone is making a claim for $3,078,572 against the $3,100,000 million policy limit.

The Defendants argue that if they are ultimately found liable to Atlas, and its loss payee the Merchants Bank, then they would be forced to exhaust the $3,100,000 million fund without addressing the non-party memoholders' claims. Alternately, according to the Defendants, should they prevail over Atlas, the current non-party memoholders could return and attempt to relitigate the same issues on the theory that they were not parties to the original action, and thus not bound by the determination.

The Defendants are correct in their analysis that they run a substantial risk of multiple litigation from the various claimants. Accordingly, as it is evident that the Defendants legitimately fear multiple litigation arising from the limited fund, the Defendants have thus established that they may be exposed to double or multiple liability as required by Rule 22.

■ Parenthetically, the Waldman Memoholders assert that it is improper to interplead prospective claimants in the absence of a formal action against the stakeholder. However, Rule 22 interpleader is available to join prospective claimants even if they have not yet brought a formal demand against the stakeholder.

The language of Rule 22 specifically provides for interpleader when a stakeholder "may be exposed to double or multiple liability." Fed.R.Civ.P. Rule 22(1). In addition, the case law consistently supports the notion that interpleader may be utilized even if some of the alleged claims have not yet been asserted. *See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 533, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967) (holding that interpleader is remedial in nature and designed to prevent the "evils" of a "race to judgment" and "unfairness" to tardy claimants to insurance funds); *Sotheby's, Inc. v. Garcia,* 802 F.Supp. 1058, 1065 (S.D.N.Y. 1992) (noting mere threat of future litigation justifies the maintenance of an interpleader action); *A/S Kreditt Pank v. Chase Manhattan Bank,* 155 F.Supp. 30, 34 (D.N.Y.1957) (holding that "[j]urisdiction is not dependent on the merits of the claims that are or may be asserted ... [t]he mere threat of future litigation is a sufficient basis for interpleader under the rule.") (citations omitted); *Pan Am. Fire & Casualty Co. v. Revere,* 188 F.Supp. 474, 481 n. 28 (E.D.La.1960) ("It is of no moment that some of the 'claims' alleged may not have been actually asserted ... the availability of interpleader is determined on the basis of the claims which 'may' be asserted. Rule 22(1) F.R.Civ.P.") (citations omitted); *see also* 7 Charles A. Wright et al., Federal Practice and Procedure § 1707 at 525 (2d ed. 1986) (commenting that the "*Tashire* approach is sound and has been followed by the lower courts.") (citations omitted).

---

5. The Atlas policies provide for the following recovery: *"Interests:* Gold and/or Silver and/or Precious Metals and/or Pearls and/or Diamonds and/or Jewelry and/or Precious Stones and/or Semi Precious Stones and/or Cash and/or other interest of a similar nature and including Furniture, Fixtures and Fittings; being the property of the Assured and/or for which they bear the risks of insurance." Atlas Ins. Policy 4S/00349/91, Schedule No. 1, Defs.' Order to Show Cause Ex. 2.

Should the Defendants be found liable to Atlas and the Bank, it is apparent that the absent memoholders will initiate actions, claiming their rights and asserting that the Defendants are bound by such a liability determination. Alternately, if the Defendants prevail against Atlas and the Bank, the absent memoholders are likely to seek to relitigate the exact same issue on the theory that they are not collaterally estopped by an action in which they were not parties. Accordingly, in the interest of equity, interpleader lies notwithstanding the prospective nature of the absent memoholders' claims.

### C. *Two or More of the Claimants Are Adverse to Each Other*

■ The second requirement for rule interpleader is that two or more of the claimants to the fund must be adverse to one another. For example, as explained in *Trowbridge v. Prudential Ins. Co.*, 322 F.Supp. 190 (S.D.N.Y.1971):

> if "A" was holding a particular picture for "B," and "B" then disappeared leaving behind "C" and "D," each of whom claimed that "B" owed the picture to him, "A" could interplead "C" and "D" because a decision on the merits in favor of one of the claimants would necessarily dictate a determination that the other was not legally entitled to recovery of the picture from "A."

*Id.* at 192 (holding that claims for recovery from an insurance contract signed in 1936 are distinct from second set of independent claims of negligent misrepresentation against insurance company which are grounded in acts committed in 1968); *see also Pan Am. Fire & Casualty Co. v. Revere*, 188 F.Supp. 474, 481 (E.D.La.1960) (holding that the "requirement that the claimants be 'adverse' in some way ... is met when, as here, the claimants, though in theory indifferent toward each other, are in fact competing for a fund which is not large enough to satisfy them all.") (citations omitted).

One court has noted that the level of adversity is directly proportional to the number of claimants to the stake:

> [I]t has been urged that the action is not proper because the claimants do not have claims adverse to each other. It might, by

the same reasoning be said that 100 persons adrift in the ocean with but one small lifeboat in sight were not adverse to each other. We fear, however, that the concept of non-adversity would dwindle in direct proportion to the number of swimmers reaching the boat.

*In Commercial Union Ins. Co. v. Adams*, 231 F.Supp. 860, 863 (S.D.Ind.1964) (granting interpleader).

Here, Atlas and the Bank have adverse interests to the memoholders. Atlas, for example, does not even recognize 18 of the memoholders and challenges the sums claimed by several of the memoholders it does recognize. Additionally, the Defendants may be seen as adverse claimants for the purposes of Rule 22 since the Defendants are denying liability to Atlas and the Bank as well as liability to all the other claimant-memoholders. *Compare* 7 Charles A. Wright et al., Federal Practice and Procedure § 1710 (2d ed. 1986 & Supp.1993) (citing cases) ("Moreover, when the stakeholder claims an interest in the fund by denying liability, the propriety of using his citizenship for diversity purposes is even clearer") *with Geler v. National Westminster Bank*, 763 F.Supp. 722 (S.D.N.Y.1991) (denying interpleader because stakeholder was *disinterested* party).

Accordingly, the adversity requirement for interpleader is met in this case.

### D. *Jurisdiction is Proper*

■ Under Rule 22, the jurisdictional amount in controversy must exceed the federal requirements of $50,000. However, "where adverse claims are asserted to a fund which exceeds the jurisdictional amount, the court is given jurisdiction to adjudicate the rights of all parties, including claimants whose individual claims are less than the jurisdictional amount." 3A James WM. Moore et al., Moore's Federal Practice ¶ 22.04 (2d ed. 1993) (citing *Principle Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942 (7th Cir.1988) (denying interpleader when total amount in controversy only $9,955.02); *Pan Am. Fire & Casualty Co. v. Revere*, 188 F.Supp. 474 (E.D.La.1960) (granting interpleader when total amount in controversy

was more than $100,000, amount of individual claims irrelevant); *Massachusetts Bonding & Ins. Co. v. St. Louis,* 109 F.Supp. 137 (D.Mo.1952) (granting interpleader since total amount of claims met jurisdictional requirement)).

.. In this case, the jurisdictional amount in controversy is $3,100,000 as the total fund is the subject matter of the action. Accordingly, it is irrelevant that some of the memoholders' individual claims are for less than the jurisdictional amount as only the total amount of the claims must be over $50,000 to establish federal jurisdiction.

■■■ Rule interpleader does not provide an independent jurisdictional basis outside of 28 U.S.C. § 1332 which provides for actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state.[6] As a result, in order to assert rule interpleader, a traditional basis for subject matter jurisdiction must exist.[7] *See Sotheby's, Inc. v. Garcia,* 802 F.Supp. 1058, 1064 n. 4 (S.D.N.Y.1992); *John v. Sotheby's,* 141 F.R.D. 29, 31 (S.D.N.Y. 1992); *Geler v. National Westminster Bank,* 763 F.Supp. 722, 726–27 (S.D.N.Y.1991).

■■■ Jurisdiction exists under Rule 22 when the citizenship of the stakeholder is diverse from that of all of the claimants, even if all the claimants share the same citizenship. *See generally,* 3A James WM. Moore et al., Moore's Federal Practice ¶ 22.04 [2.–1] [17–26, 68–70] (2d ed. 1993) (collecting citations). Likewise, courts in the Second Circuit have found jurisdiction based on the diversity of citizenship between the stakeholder and the claimants. *See, e.g., John*

*Hancock Mut. Life Ins. Co. v. Kraft,* 200 F.2d 952, 953 (2d Cir.1953) (holding diversity requirements of adverse claimants under statutory interpleader, 28 U.S.C. § 1335, does "not abolish the equitable remedy of interpleader which has long existed under 28 U.S.C.A. § 1332, where there is diversity of citizenship between the stakeholder and the claimants."); *Republic of China v. American Express Co.,* 95 F.Supp. 740 (D.N.Y.1951), *aff'd,* 195 F.2d 230 (2d Cir.1952). In a case, such as this, where the stakeholder is aligned against all of the claimants, and the stakeholder denies liability in whole or in part, the stakeholder's citizenship may be considered for diversity purposes. *See* 3A James WM. Moore et al., Moore's Federal Practice 22.04 [20–23] (2d ed. 1993) (discussing cases and propriety of federal court's asserting ancillary jurisdiction in order to render interpleader relief available).

Accordingly, the stakeholder Defendants have sufficiently established the requisite jurisdictional amount and, as they are citizens of a foreign state, they have established jurisdictional diversity from the claimants.

### Conclusion

For the reasons set forth above, the Defendants' motion for an order of interpleader, pursuant to Fed.R.Civ.P. Rule 22, is granted. The Defendants' motion for joinder, pursuant to Fed.R.Civ.P. Rule 19, is denied.

It is so ordered.

---

**6.** 28 U.S.C. § 1332 provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiffs and citizens of a State or of different States.
. . . .

**7.** 28 U.S.C. § 1367 does not apply to interpleader as the language of that statute refers only to "Rule 14, 19, 20 or 24." Although Judge Freeh extended the scope of § 1367 to Rule 13(h), it was only on the basis that that Rule explicitly incorporates Rules 19 and 20, Fed.R.Civ.P., in the joinder of additional parties. *See Mayatextil, S.A. v. Liztex United States, Inc.,* 92 Civ. 4528, 1993 WL 180371, *2–3, 1993 U.S.Dist. LEXIS 6527, **7–8 (S.D.N.Y. May 18, 1993) (extending the scope of 28 U.S.C. § 1367 to Fed.R.Civ.P. Rule 13(h)). The language of Rule 22 describes the rule as a "supplement" to the rules governing the joinder of parties, specifically Rule 20, and accordingly, 28 U.S.C. § 1367 may not be similarly used to limit the scope of Rule 22.