**Jeannette HAUSLER, Petitioner,**

v.

**JP MORGAN CHASE BANK, N.A., Citibank, N.A., UBS AG, the Royal Bank of Scotland, N.V., and Bank of America, N.A., Respondents.**

**No. 09 Civ. 10289(VM).**

United States District Court, S.D. New York.

Signed Oct. 2, 2015.

**250**

Alfonso J. Perez, Rasco Reininger Perez & Esquenazi, Karen Oiivia–Marie Stewart, Roberto Martinez, Colson, Hicks & Eidson, Coral Gables, FL, Daniel Feist Schreck, Law Offices of G. Oliver Koppell & Assoc., James Wilson Perkins, Greenberg Traurig, LLP, New York, NY, for Petitioner.

James Loran Kerr, Thomas Matthew Noone, Davis Polk & Wardwell L.L.P., James Wilson Perkins, Greenberg Traurig, LLP, New York, NY, for Respondents.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Presently before the Court are: (1) the submission in this matter from petitioner Jeannette Hausler ("Hausler") and JP Morgan Chase Bank, N.A. ("JPM Chase") (collectively, the "Parties"), dated September 3, 2015 ("September 3 Submission," Dkt. No. 641), made pursuant to Section IV of the Court's Order dated August 4, 2015 ("August 4 Order," Dkt. 638); (2) JPM Chase's third-party petition alleging claims in the nature of interpleader ("Interpleader Petition," Dkt. No. 440); and (3) Hausler's petition for turnover ("Tranche VI Petition," Dkt. No. 421).

### I. *THE AUGUST 4 ORDER* [1]

In the August 4 Order, the Court, among other things, denied JPM Chase's Interpleader Petition with regard to Pablo Alcazar, Mayra Bustamante, and Rene Silva, Jr. (*See* August 4 Order Sections II(B)(1)(a), IV.) However, the Court reserved judgment as to whether to grant the Interpleader Petition with respect to the Fundacion Benefica Nicolas S. Acea ("Fundacion"), noting that "there is now a significant question as to whether service of the Interpleader Petition was properly effectuated on the Fundacion," and that "further submissions from the Parties are warranted." (*See id.* § 11(B)(1)(b).)

Furthermore, the Court determined that Hausler has a right to execute upon the blocked assets ("Blocked Assets") that are the subject of the Tranche VI Petition.[2] (*See id.* § 11(C)(2).) However, because the Court was persuaded that further information from the parties related to the Fundacion was necessary before making a final decision as to turnover, the Court did not issue an order of turnover at that time. (*See id.*) Instead, the Court stated that "[a]t a later date, following the review of the submissions from the parties as described ... *infra* ..., should the facts still warrant an order of turnover allowing Hausler to execute upon the Blocked Assets, the Court will issue such an order." (*Id.*)

---

1. The Court assumes familiarity with the facts and legal analysis set forth in the August 4 Order.

2. The Tranche VI Petition seeks an order requiring JPM Chase to turn over the Blocked Assets to the United States Marshal for the Southern District of New York ("Marshal") pursuant to Section 201 of the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. § 1610. (*See generally* Tranche VI Petition.) The Blocked Assets, which are blocked under Cuban Asset Control Regulations, 31 C.P.R. Part 515 ("CACRs"), are currently held in accounts in the possession of JPM Chase. (*See* August 4 Order § I(E).)

The Court then ordered, among other things, that the Parties make, within thirty days, a joint submission or separate submissions, describing: (1) affirmative measures the parties took that were reasonably calculated to provide notice and serve a copy of the Interpleader Petition and the August 4 Order upon the Fundacion; and (2) a declaration stating whether or not any legitimate entity purporting to be or represent the Fundacion has come forward and asserted a good faith claim averring that the Fundacion was not nationalized by the Cuban government following the Cuban Revolution, and thus still legally exists and is entitled to ownership of interest in the funds at issue in this action. (*See* August 4 Order, § IV.)

The Court further ordered, in relevant part:

> that in the event the [P]arties report in their submissions that no legitimate entity responded to the notice and service provided for above asserting a good faith claim that it is or represents the Fundacion and thus has any legal interest in the outcome of this action, the Court shall deem the Interpleader Petition **DENIED** as to the Fundacion, and Hausler's petition for a turnover order in respect to the funds at issue in this action **GRANTED** without further filings by the parties.

*Id.*

## II. *THE SEPTEMBER 3 SUBMISSION*

On September 3, 2015, the Parties made a submission in accordance with the August 4 Order. In a joint letter to the Court, the Parties described the affirmative measures taken to notify any existing Fundacion claimants of the Interpleader Petition and August 4 Order. These measures comprised 1) courier delivery by Petitioner of the August 4 Order and Interpleader Petition to the Cuban Embassy in Washington, D.C., the Cuban Consulate in New York City, and Cuba's Ministerio de Relaciones Exteriores in Havana (Dkt. No. 641, Ex. A, B, C, D, E, F); 2) courier delivery by Respondent to ten entities and individuals, in Cuba and the United States,[3] who could conceivably have knowledge of the Fundacion trustees' whereabouts (Dkt. No. 641, Ex. G); and 3) published notice, including a copy of the Interpleader Petition and August 4 Order, in three widely circulated print and online publications—the Wall Street Journal, the Miami Herald and El Nuevo Herald—for three consecutive days. (Dkt. No. 641, Ex. H, I, J, K.)

The deadline for response by any Fundacion claimants passed on September 26, 2015. Both parties attest that as of the end of business on September 28, 2015, no person or entity purporting to represent the Fundacion has come forward to assert a claim to funds or to assert that the Fundacion was not nationalized by the Cuban government. (Dkt. Nos. 643, 644.)

## III. *SERVICE OF PROCESS*

■ Having considered the September 3 submission, the Court now finds that

**3.** Those institutions and individuals are: the Cuban Ministry of Foreign Affairs; the Cuban Ministerio de Salud Publico; the Cuban Ministerio de Educacion; Hospital Pediatrico Universitario Paquito Gonzalez; Hermanas de la Caridad (a/k/a Hijas de la Caridad); Eric T. Schneiderman, Office of the Attorney General of the State of New York; Nicolas S. Acea Eleemosynary Foundation; Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C.; Fundacion Benefica Nicolas S. Acea and Pablo Alcazar, Mayra Bustamante and Rene Silva Jr. as Trustees; and the United States of America and the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department.

service of the Interpleader Petition and the August 4 Order was properly effectuated upon the Fundacion. At the time of the August 4 Order, service of the Interpleader Petition had been made upon the Fundacion by means of serving Pablo Alcazar, who accepted service on behalf of the Fundacion. (*See* August 4 Order § 11(1)(B).) However, this method was not sufficient to serve the Fundacion because, as discussed at length in the August 4 Order, Pablo Alcazar has no standing to represent or act on behalf of the Fundacion in any way. (*See id.* § 11(C).) The Court therefore could not grant—or even consider the merits of—the Interpleader Petition with regard to the Fundacion. (*See id.*) The submission from the Parties indicates that this defect in service has now been remedied.

As discussed in the August 4 Order, the Fundacion has never come forward to participate in this action, and its whereabouts are unknown. "The Blocked Assets have been frozen for over forty years, and the Tranche VI Petition, which is a matter of public record, was filed in 2011." (August 4 Order § II(C)(1)(a).) The measures Hausler and JPM Chase took to serve notice on Fundacion claimants of the Interpleader Petition and August 4 Order satisfy the requirements of effective service where the party to be served is missing and possibly nonexistent.

█ Due process requires that notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Where the identities of individuals to be served are unknown, as is the case with the Fundacion claimants, service may be by alternative means such as publication. *See S.E.C. v. Tome*, 833 F.2d 1086, 1094 (2d Cir.1987)

(finding service by publication in international circulation adequate where parties' names and addresses could not be obtained with reasonable diligence). The Parties published notice in not one but three publications of general circulation, in English and Spanish, for three consecutive days. The parties additionally tried to locate and serve notice on the Fundacion, through certain agencies and individuals, that was reasonably calculated to reach persons who may know of any existing Fundacion trustees. These sources included the Cuban Embassy in the U.S. and Cuban Ministries of Foreign Affairs, Health and Education. (*See* Dkt. No. 641.)

█ The parties further satisfied the requirements of notice to an individual in a foreign country under Fed.R.Civ.P. 4(f)(3) in the event that Fundacion claimants reside in Cuba. Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." The rule "gives considerable discretion to district courts to fashion methods for appropriate international service." *S.E.C. v. Shehyn*, No. 04–cv–2003, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008). Publication of a summons and complaint once a week for four successive weeks has been found to "comport[ ] with notions of due process." *Id.* The Parties published notice as directed by the Court in three newspapers of general circulation for three consecutive days, in addition to attempts at mail service. (August 4 Order, § IV; Dkt. No. 641.)

The efforts reported by the Parties to locate and notify Fundacion claimants both in the United States and Cuba, summarized above, represent reasonable and effective service. As discussed in the August 4 Order, extensive evidence indicates that the Fundacion was nationalized by the Cuban government following the Cuban Revolution, such that anyone who might

have once had the authority to represent the Fundacion's interests when it existed as a private organization would have lost that authority. (*Id.*) It is unknown whether anyone purporting to be a representative of the Fundacion presently exists. (*Id.*) Thus, the indirect means of service employed the Parties were wholly appropriate and pose no bar to this Court's adjudication of issues bearing on the rights of the Fundacion.

## IV. *INTERPLEADER PETITION*

In relevant part, Rule 22 provides:

Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.... A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

Fed.R.Civ.P. 22(a)(1)-(2).

■ "Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund .... Accordingly, what triggers interpleader is a real and reasonable fear of double liability or vexatious, conflicting claims." *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993) (internal quotation marks and citations omitted). "As a remedial joinder device, interpleader is to be liberally construed." *Weininger v. Castro*, 462 F.Supp.2d 457, 500 (S.D.N.Y.2006); *see also 6247 Atlas Corp. v. Marine Ins. Co.*, 155 F.R.D. 454, 461 (S.D.N.Y.1994).

■ The merits of the alleged competing claims are generally not relevant to the question as to whether interpleader relief is appropriate. *6247 Atlas Corp.*, 155 F.R.D. at 462 (finding that interpleader is appropriate where a stakeholder "legitimately fears multiple [liability] directed against a single fund, regardless of the merits of the competing claims." (*citing*

*John v. Sotheby's*, 141 F.R.D. 29, 33 (S.D.N.Y.1992) (internal quotation marks omitted)). "Although it is possible that a claim may be so baseless to preclude a finding of a good faith belief in multiple liability," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98–CV–1756, 2001 WL 11070, at *6 (S.D.N.Y. Jan. 4, 2001)), interpleader is warranted where the stakeholder's "concern is real and not fancied" *Bache Halsey Stuart Shields Inc. v. Garmaise*, 519 F.Supp. 682, 685 (S.D.N.Y.1981).

■ The Court finds that JPM Chase has no "legitimate[ ]" fear of multiple liability with regard to the Fundacion. *6247 Atlas Corp.*, 155 F.R.D. at 462. First, although "the Blocked Assets have been blocked pursuant to the CACRs for more than 40 years and have been the subject of litigation related to the Tranche VI Petition on the public record since 2011," as of yet no bona fide representative of the Fundacion has come forward. (*See* August 4 Order § 11(B)(1)(b) n. 17.) Now, even after the Parties' efforts to locate and notify Fundacion claimants, detailed *supra*, JPM Chase has still been unable to identify any alleged representative of the Fundacion who asserts or reasonably could assert any interest in the Blocked Assets. (*See* September 3 Submission, Dkt. No. 641.) The failure by any representative of the Fundacion to respond to the Interpleader Petition—even in these circumstances—is not in itself conclusive, but is certainly significant evidence that JPM Chase cannot legitimately fear a competing claim from the Fundacion to the Blocked Assets.

Second, that no bona fide representative from the Fundacion has come forward in all this time, even after the service efforts undertaken by the Parties since the August 4 Order, is further evidence of the probability that the Fundacion has been

nationalized and no longer exists as a private organization. As discussed extensively in the August 4 Order, the uncontroverted evidence demonstrates that the Fundacion was nationalized by the Cuban government in or about 1959 following the Cuban Revolution. (*See* August 4 Order § II(C)(1)(a).) In the absence of any purported representative of the Fundacion asserting in this Court that the Fundacion has not been nationalized, the Court now affirms its finding, made in the August 4 Order, that the Fundacion was indeed nationalized by the Cuban government. (*Id.*)

The record shows that, once nationalized, the assets of the Fundacion became the property of Cuba, and "all decisions [related to the Fundacion] were made and approved at the government level. A private citizen would not have been recognized by the Cuban government as a trustee, in any meaningful sense of the word." (*Id.*) It is therefore a legal impossibility for any private individual or entity to assert, on behalf of the Fundacion, a competing claim with any merit whatsoever to the Blocked Assets. Although, "interpleader is to be liberally construed" *Weininger,* 462 F.Supp.2d at 500, and even though a legitimate fear of multiple liability can exist "regardless of the 'merits of the competing claims'." *6247 Atlas Corp.,* 155 F.R.D. at 462, it is clear at this time that any claim to the Blocked Assets asserted on behalf of the Fundacion would be "so baseless to preclude a finding of a good faith belief in multiple liability" on the part of JPM Chase. *Merrill Lynch,* 2001 WL 11070, at *6.

Accordingly, the Court denies the Interpleader Petition with regard to the Fundacion. Because the Interpleader Petition has already been denied as to Pablo Alca-

zar, Mayra Bustamante, and Rene Silva, Jr., the only other potentially adverse claimants identified by JPM Chase, the Interpleader Petition is now denied in its entirety.

## V. *TRANCHE VI PETITION*

As discussed at length in the August 4 Order, Hausler has a right to execute upon the Blocked Assets pursuant to TRIA Section 201(a). (*See* August 4 Order § II(C)(2).) However, the Court stated that it would review the submission of the Parties made pursuant to Section IV of the August 4 Order prior to issuing a turnover order.

 The Court has now reviewed this submission, and has determined that the facts in the case at hand continue to warrant turnover. Hausler has a right to execute upon the Blocked Assets by law, and no competing claims ranking above Hausler's have been identified at this time. In fact, no claims adverse to Hausler's have been identified at all. Consequently, an order of turnover as provided by TRIA and related federal statutes is required. *See Hausler v. JPMorgan Chase Bank, N.A. ("Hausler II"),* 845 F.Supp.2d 553, 569 (S.D.N.Y.2012.) [4]

## VI. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the "Third Party Petition Alleging Claims in the Nature of Interpleader" ("Interpleader Petition," Dkt. No. 440) of respondent JPMorgan Chase Bank, N.A. ("JPM Chase") is **DENIED** with regard to third-party defendant the Fundacion Benefica Nicolas S. Acea ("Fun-

---

4. *Hausler II* was reversed and remanded by the Second Circuit in *Hausler v. JP Morgan Chase Bank, N.A.,* 770 F.3d 207, 210 (2d Cir. 2014) (*"Hausler III"*), which held that TRIA does not preempt state law. However, this citation to *Hausler II* references legal analysis that was not the subject of the Second Circuit's reversal.

dacion"), and consequently is **DENIED** in its entirety; and it is further

**ORDERED** that the "Petition for Turnover Order Pursuant to Federal Rule of Civil Procedure 69 and CPLR 5225(b)" ("Tranche VI Petition," Dkt. No. 421), of petitioner Jeannette Hausler ("Hausler") is hereby **GRANTED**; and it is further

**ORDERED** that judgment shall be entered in favor of Petitioner Hausler and against JPM Chase, in its capacity as garnishee, directing JPM Chase to turn over to the United States Marshal for the Southern District of New York (the "Marshal") the sum of no less than three million nine hundred forty-two thousand five hundred ninety dollars and seventy-eight cents ($3,942,590.78) plus interest accrued thereon since June 30, 2015 plus costs and disbursements to be taxed by the Clerk of Court; and it is further

**ORDERED** that JPM Chase shall be entitled to an award of its reasonable costs and attorneys' fees in an amount to be agreed upon with the Petitioner or to be awarded by the Court upon application; and it is further

**ORDERED** that within fifteen (15) business days of service of this Order, JPM Chase turn over the funds specified above to the Marshal; and it is further

**ORDERED** that within fifteen (15) business days of receipt from JPM Chase of the funds specified above the Marshal shall transfer such funds to Hausler in accordance with such payment instructions as may be provided jointly by counsel of record for Hausler; and it is further

**ORDERED** that within fifteen (15) business days of receipt of funds from the Marshal, or within 15 business days from the date on which the Court approves an amount agreed upon for the award, counsel for Petitioner or Petitioner shall pay over to JPM Chase from the amount referred to above the amount of reasonable costs and attorneys' fees agreed upon by the Parties or awarded by the Court; and it is further

**ORDERED** that Pablo Alcazar, Mayra Bustamante, Rene Silva Jr., their predecessors-in-interest and their successors-in-interest, and any other person or entity purporting to act on behalf of the Fundacion, are enjoined from asserting any claim against JPM Chase either in their individual capacity or on behalf of the Fundacion arising from their purported representation of the Fundacion or based on any claim to the Fundacion Accounts; and it is further

**ORDERED** that, as a result of the notice and service made by publication and the directed mailings provided for in the Court's Decision and Order (Dkt. No. 638) and as described in the Joint Submission (Dkt. No. 641), the Fundacion has been made a party to this action and has been properly served, and shall by bound by this Order, including without limitation the factual finding that the Fundacion has been nationalized by the Republic of Cuba; and it is further

**ORDERED** that, upon compliance with this Order, garnishee/respondent/third-party petitioner JPM Chase shall be fully discharged pursuant to CPLR Sections 5209 or 6204, as applicable, from any and all deposit obligations or other liabilities to the Republic of Cuba or to any other party, including, without limitation, the Fundacion, Pablo Alcazar, Mayra Bustamante, Rene Silva Jr., their predecessors-in-interest, any successors-in-interest, and any person having an interest in the Fundacion Accounts which, prior to the September 28, 2015 deadline, has not asserted a claim to funds held in those Accounts that are now subject to turnover, to the full extent of such amount so held and paid to the Marshal in accordance with this Order, and that each and every party to this

proceeding is hereby and shall be restrained and enjoined from instituting or prosecuting any claim or action against JPM Chase in any jurisdiction arising from or relating to any claim to the Blocked Assets that JPM Chase turns over to the Marshal in compliance with this Order.

**SO ORDERED.**